NATIONAL BANK OF GALLATIN VALLEY, Appellant, *v.* INGLE et al., Defendants; WIRAK et al., Respondents.

(No. 3,744.)

(Submitted March 21, 1917.  Decided March 31, 1917.)

[164 Pac. 535.]

*Contracts — Construction — Chattel Mortgages — Innocent Purchaser—Estoppel.*

Contracts—Lease of Sheep—Construction by Parties.
  1.  Where the parties to a lease of a band of sheep construed the contract so as to express their intentions and acted in accordance therewith, the court will adopt the construction they placed upon it as to which party had title to lambs sold by the lessee.

Same—Chattel Mortgages—Priority—Lessor's Lien.
  2.  Where a band of sheep was leased, the lessee to receive half the wool and lambs, and the latter mortgaged the lambs, and, when the division of lambs between lessor and lessee took place, the lessor had notice of the mortgage, but consented to the division, he waived his

lien; so that when the lessee directed the purchaser of his share of the lambs to pay the money to a bank, the direction constituted a verbal assignment, upon which the bank could maintain its action.

[As to priority of lien as between chattel mortgagee and livery-stable keeper, see note in **Ann. Cas. 1914B, 316.**]

Same—Rights of Third Persons—"Innocent Purchaser."

    3.  An "innocent purchaser" is one who pays or obligates himself to pay the full purchase price of mortgaged property to the vendor, with no notice of any claim or right to the property in another.

Estoppel—Right to Assert.

    4.  A party who was not misled to his prejudice by anything done by his adversary is not in a position to assert estoppel.

*Appeals from District Court, Sweet Grass County; Albert P. Stark, Judge.*

ACTION by the National Bank of Gallatin Valley against Ernest Ingle and others. From a judgment denying plaintiff any relief as against defendant Parham, and from an order refusing a new trial, plaintiff appeals. Judgment and order reversed and cause remanded, with directions to enter judgment for plaintiff against defendant Parham.

*Mr. George Y. Patten,* for Appellant, submitted a brief and argued the cause orally.

The protection given to an innocent purchaser as against a mortgage of which he had no knowledge rests upon the principle that a man ought not to be prejudiced in his rights by facts which he did not know, and which it cannot be said that he ought to have known; that as a purchaser he has parted with value in ignorance of facts which otherwise would defeat his claim; and that a contrary rule would make it impossible for men to engage in trade, because the purchaser would always be in danger of losing what he had purchased through secret claims and encumbrances, even though he had acted with care and in perfect good faith. It is only the purchaser who has parted with value who is within the rule, and who is thus protected as an innocent purchaser, because until he has parted with the purchase price, he does not need the protection which the rule affords. If he has knowledge of the mortgage before he receives the property, he is not within the rule, because the danger being known, he acts

at his peril.   The innocent purchasers whom the law so jealously guards are not those who are indemnified.   Purchasers without notice are not entitled to protection further than as they have actually paid consideration.   (*Warner* v. *Whittaker,* 6 Mich. 133, 72 Am. Dec. 65; *Everts* v. *Agnes,* 4 Wis. 343, 65 Am. Dec. 314; *Matson* v. *Melchor,* 42 Mich. 477, 481, 4 N. W. 200; *Wynn* v. *Carter,* 20 Wis. 107; *Wells* v. *Smith,* 2 Utah, 39, 52; *Roberts* v. *W. H. Hughes Co.,* 86 Vt. 76, 83 Atl. 807.)

A mortgagee may join as a defendant in an action to foreclose his chattel mortgage one who has purchased any of the mortgaged property, and may have a personal judgment against such purchaser if he has disposed of the mortgaged property after purchasing it.   (7 Cyc. 102.)   In the case of *McDaniel* v. *Chinski,* 23 Tex. Civ. App. 504, 57 S. W. 922, it is held that it is not error to join as a party defendant one who has received from the mortgagors a part of the mortgaged property and converted it to his own use, since if he has disposed of the property, a personal judgment may be entered against him.

To the same effect are *Reynolds* v. *Fitzpatrick,* 23 Mont. 52, 57 Pac. 452; *Cone* v. *Ivinson,* 4 Wyo. 203, 33 Pac. 31, 35 Pac. 933; *Alter* v. *Bank of Stockham,* 53 Neb. 223, 73 N. W. 667; *Dose* v. *Beatie,* 62 Or. 308, 123 Pac. 383; affirmed on rehearing, 125 Pac. 277; *Haynes & Bro.* v. *W. O. Gray & Co.,* 148 Ala. 663, 41 South. 615; *Gray* v. *Haynes & Bro.,* 164 Ala. 294, 51 South. 416; *Burchinell* v. *Koon,* 25 Colo. 59, 52 Pac. 1100; *Grainger* v. *Lindsay,* 123 N. C. 216, 31 S. E. 473; *Donovan* v. *St. Anthony & D. Elevator Co.,* 7 N. D. 513, 66 Am. St. Rep. 674, 75 N. W. 809; *Buffalo Pitts Co.* v. *Stringfellow-Hume Hdw. Co.,* 61 Tex. Civ. App. 49, 129 S. W. 1161; *State Nat. Bank* v. *Cudahy Packing Co.,* 126 Fed. 543; *Wilkes* v. *Southern Ry.,* 85 S. C. 346, 137 Am. St. Rep. 890, 21 Ann. Cas. 79, 67 S. E. 292.

*Mr. John E. Barbour* and *Mr. F. B. Reynolds,* for Respondents, submitted a brief; *Mr. Reynolds* argued the cause orally.

"Where a mortgagee authorizes the mortgagor, as his agent, to sell mortgaged property and to deposit the proceeds in a bank

to be applied on the mortgage debt, the lien of the mortgage does not attach to the proceeds." (5 R. C. L., "Chattel Mortgages," sec. 79.) "A purchaser from a mortgagor takes the title free from the lien of the mortgage if the sale was made with the express or implied consent of the mortgagee." (7 Cyc. 47; *Ziegler* v. *Ilfeld,* 52 Colo. 275, Ann. Cas. 1913D, 583, 122 Pac. 56; *Brandt* v. *Daniels,* 45 Ill. 453; *Farmer* v. *Bank of Graettinger,* 130 Iowa, 469, 107 N. W. 170; *Carter* v. *Fately,* 67 Ind. 427; *Maier* v. *Freeman,* 112 Cal. 8; 53 Am. St. Rep. 151, 44 Pac. 357; *Benedict* v. *Farlow,* 1 Ind. App. 160, 27 N. E. 307; *Clark* v. *Hale,* 8 Gray (74 Mass.), 187; *White Mountain Bank* v. *West,* 46 Me. 15, 20; *First Nat. Bank of Marquette* v. *Weed,* 89 Mich. 357, 50 N. W. 864; *Partridge* v. *Minnesota etc. Elevator Co.,* 75 Minn. 496, 78 N. W. 85; *Lafayette County Bank* v. *Metcalf,* 29 Mo. App. 384; *Drexel* v. *Murphy,* 59 Neb. 210, 80 N. W. 813; *Gage* v. *Whittier,* 17 N. H. 312; *Rider* v. *Powell,* 28 N. Y. 310; *Merritt* v. *Kitchin,* 121 N. C. 148, 28 S. E. 358; *Flenniken* v. *Scruggs,* 15 S. C. 88; *Houston etc. R. Co.* v. *Garrison* (Tex. Civ.), 37 S. W. 971; *Adams* v. *Pease,* 113 Ill. App. 356.) The purchaser of the mortgaged chattels need not know when he makes the purchase that the mortgagee has consented to the sale. (*Livingston* v. *Stevens,* 122 Iowa, 62, 94 N. W. 925; *Knollin & Co.* v. *Jones,* 7 Idaho, 466, 63 Pac. 638; *Ziegler* v. *Ilfeld,* 52 Colo. 275, Ann. Cas. 1913D, 583, 122 Pac. 56; *Farmer* v. *Bank of Graettinger,* 130 Iowa, 469, 107 N. W. 170; *Maier* v. *Freeman,* 112 Cal. 8, 53 Am. St. Rep. 151, 44 Pac. 357; *Drexel* v. *Murphy,* 59 Neb. 210, 80 N. W. 813; *New England M. S. Co.* v. *Great Western Elevator Co.,* 6 N. D. 407, 71 N. W. 130.) So in case at bar, it being undisputed that Ingle was authorized by plaintiff to sell the lambs and account to it for the proceeds, the decree should be in favor of the respondent Parham. Such consent may be orally expressed. (Jones on Chattel Mortgages, pars. 465, 486; *Frick Co.* v. *Western Star Milling Co.,* 51 Kan. 370, 32 Pac. 1103; *Stafford* v. *Whitcomb,* 8 Allen (90 Mass.), 518; *Pratt* v. *Maynard,* 116 Mass. 388; *Roberts* v. *Crawford,* 54 N. H. 532.)

The fact that Parham sold and delivered the property in question to Bailey without notice or knowledge of the existence of the mortgage in question constitutes a complete bar to plaintiff's action. (*Reynolds* v. *Fitzpatrick,* 28 Mont. 170, 72 Pac. 510.)

In case at bar the sale to Parham was completed prior to the commencement of this suit, prior to the assertion by the bank of its right under the mortgage in question by any action or process, and prior to any attempt on its part to take possession of the lambs under the terms of its mortgage, and under the decision above cited, these facts are an absolute defense to plaintiff's alleged cause of action. It is well established that a party can maintain an action of conversion only when he is entitled to the possession of the property at the time of the alleged conversion or sale. (Jones on Chattel Mortgages, sec. 444; *Donovan* v. *St. Anthony & D. Elevator Co.,* 7 N. D. 513, 66 Am. St. Rep. 674, 75 N. W. 809; *Danley* v. *Rector,* 10 Ark. 211, 50 Am. Dec. 242; *Ames* v. *Palmer,* 42 Me. 197, 66 Am. Dec. 271; *Davidson* v. *Waldron,* 31 Ill. 120, 83 Am. Dec. 206; *Swenson* v. *Kleinschmidt,* 10 Mont. 473, 26 Pac. 198; *Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac. 1070; *Reynolds* v. *Fitzpatrick,* 23 Mont. 52, 57 Pac. 452.)

HONORABLE R. LEE McCULLOCH, a Judge of the Fourth Judicial District, sitting in place of the Chief Justice, delivered the opinion of the court.

This action was brought to recover on a promissory note executed and delivered by defendant Ingle to plaintiff, and to foreclose a chattel mortgage, given to secure the same. From the judgment, in so far as it denied plaintiff any relief as against defendant Parham, and from an order refusing a new trial, these appeals are prosecuted.

The plaintiff alleges that defendant Wirak leased a band of ewe sheep to defendant Ingle for a term of three years. Ingle was to perform certain services and pay certain expenses incident to the care of the flock, and, in payment and reimbursement therefor, to receive one-half the wool clip and one-half the lambs; the wool to be divided each year at the shearing-pens and the

lambs to be divided when weaned, on October 1 of each year; the title to the lambs to be in defendant Wirak until division was made as stipulated in the agreement. All shortage in the original stock was to be made good by Ingle at shearing time each year, by furnishing ewes of the age of those lost, or, at the option of Ingle, to replace such loss by giving three ewe lambs for every two ewes lost. At the end of the third year Ingle was to replace the original stock with ewes of a certain age, and the original stock was then to become the property of Ingle. At shearing time in 1912 (the third year) the original stock had been diminished to the extent of some 800 head, which Ingle was obliged to replace, but which he did not replace, then nor at any other time.

In January, 1912, Ingle executed and delivered the promissory note and the chattel mortgage sued upon, and the mortgage was duly filed for record. From the pleadings it appears that prior to October 1, 1912, defendant Parham contracted with defendant Wirak for the purchase of all the lambs belonging to the band of sheep in question; that Parham had knowledge at the time of the interests of Ingle in the lambs, but had no actual knowledge of the existence of the chattel mortgage at the time of the purchase by him of the lambs; that the lambs were delivered to Parham after October 1 and by him immediately delivered to one Bailey, to whom he had sold them; that after delivery of the lambs, and before Parham paid the purchase price, he was informed of the existence of plaintiff's chattel mortgage, and was directed by Ingle to pay the plaintiff the amount due him for his one-half of the lambs; that, owing to the failure of Ingle to replace the sheep missing from the band, Wirak demanded payment of all the money to him, and Parham paid it to Wirak, instead of to the bank.

The trial court found, along with other facts, that in the latter part of August, 1912, Wirak, with the consent of Ingle, contracted with Parham for the sale of the lambs, and at the same time informed Parham of Ingle's interest; that in the latter part of September Wirak was informed and had knowl-

edge and notice of plaintiff's chattel mortgage. Among its conclusions of law, the trial court declared that the sale of the lambs to Parham operated as and effected a division of the lambs as between Wirak and Ingle, and that each of them thereby became entitled to one-half of the proceeds of the sale; that the filing of the mortgage, owing to the indefinite description of the property did not impart notice to Parham; that the sale of the lambs from Wirak to Parham was completed when the delivery was made to Parham; that when Parham first learned of the mortgage he had sold and delivered the lambs to one Bailey, and that Ingle and Wirak were present at and knew of such sale and delivery; that Parham was not then in possession, nor had he any interest in them; that plaintiff, by its agent, Ingle, having consented to the sale and assisted in the delivery of the lambs to Parham without informing him of its mortgage, and not having given Parham notice of its claim prior to his sale and delivery of the lambs to Bailey, is estopped from asserting any claim against defendant Parham. Judgment was awarded against Ingle, but in favor of Parham. No judgment was sought against Wirak.

At the time Ingle executed and delivered the chattel mortgage to plaintiff, had he any interest in the increase of the flock that could be mortgaged?

The contract provided that the shortage of ewes was to be made good by replacement at shearing time; that the division of lambs was to take place on October 1, and that the title to the lambs was to remain in Wirak until the division of them was made. If the language of the contract were strictly construed, Ingle would have no title or interest in the lambs until October 1, even had he at shearing time made good all shortages occasioned by losses occurring in the original band during the previous year. From shearing time to October 1 Ingle would be compelled to care for a large band of lambs in which he had no interest. Notwithstanding the language of the contract to the effect that title was to remain in Wirak until division, the intention of the parties was evidently that Wirak was to have

a lien upon the lambs to secure the faithful performance by Ingle in the way of replacement of lost stock. Wirak alleges in his answer: "That it was the intention of said parties to said contract that the provision above mentioned, as to the title to said lambs remaining in defendant Louis L. Wirak until the same were divided, should stand as security to said Louis L. Wirak for the performance of the obligation of said Ernest Ingle assumed by him in said contract, including the obligation to make good the loss on the original stock as above mentioned; * * * that said plaintiff took said mortgage with full knowledge of the terms of said contract made and entered into by and between said Louis L. Wirak and Ernest Ingle, and did thereby take said mortgage subject to the equities of defendant Louis L. Wirak."

If the right Wirak was intended to have, and which he and Ingle understood he had, was a mere equity, to-wit, security for performance of Ingle's agreement to replace stock on account of losses, then the title to the lambs was not in Wirak, but, instead, he had a lien upon the lambs for the performance of that particular part of the contract, and Ingle had the title. Assuredly Wirak could not hold his own property as security for the performance of an obligation Ingle owed to him. He certainly so understood when he contracted with Parham for the sale of the lambs and informed Parham of Ingle's interest; and Ingle certainly so understood when he mortgaged his interest in the lambs [1] to plaintiff. The parties themselves having construed the contract so as to express their intentions, and having acted in accordance therewith, the court will adopt the construction they placed upon it.

Aside from this, the contract gave Ingle a certain interest in the original sheep, being the right not only to the possession and care of them, to the end that they might yield an increase from which he could receive pay for his services, but also the right to become owner of the original stock by substitution of other stock therefor. Title became vested in a particular one-half of the lambs or the proceeds thereof when, as the court concluded,

a division was effected by the sale and delivery to Parham on October 10.

Wirak had no knowledge of the existence of the chattel mortgage until the latter part of September, which was shortly before the delivery of the sheep to Parham. When the division of lambs between Wirak and Ingle took place, Wirak had notice of plaintiff's mortgage; yet he saw fit to consent to a division of the lambs, which divested him of his lien upon them. The division of the lambs did not divest Wirak of the right to have the losses of original stock made good by Ingle, but it did divest him of the security he had for the making good of such loss; so that the mortgage of the bank, which up to that time was subject to the lien of Wirak, was no longer so as between Wirak and the bank.

Another conclusion of law made by the trial court is that, since a delivery of the lambs was made by Wirak and Ingle to Parham, and also by Parham to Bailey—Bailey being a purchaser from Parham—with the knowledge of Wirak and Ingle, before Parham became aware of the bank's mortgage, and the sale between Wirak and Parham being complete, there is no liability on the part of Parham to the bank, although Parham had notice of the mortgage before he paid the money to Wirak. This is not correct, because it overlooks the proposition that the division of the lambs effected a waiver by Wirak of his security upon Ingle's share and operated to vest in Ingle the right to dispose of the proceeds. When, therefore, Ingle directed the payment of his share of the purchase money to the bank, that direction was in effect a verbal assignment which Parham was bound to honor, and upon which the bank could maintain its action.

Moreover, Parham was not an innocent purchaser for value. An innocent purchaser is one who pays, or obligates himself to pay, the full purchase price of property to the vendor, with no notice of any claim or right to the property in another. (4 Words and Phrases, p. 3629; 5 Cyc. 719; 24 Am. & Eng. Ency. Law, 2d ed., p. 12.) Assuming that Wirak made the sale to Parham, and that Ingle was not known in the transaction, as

respondents' attorneys contend in their brief, and that Parham then obligated himself to Wirak for the payment of the full purchase price, he was not an innocent purchaser so far as Ingle was concerned, because he then knew that Wirak was not the sole owner of the lambs, and he also knew that Ingle had some property right in them, and the extent of that right.   Knowing, when he first obligated himself to Wirak, that Ingle was a part owner of the lambs, knowing, when the lambs were delivered, that Wirak had no right to receive the entire purchase price, and learning, before he had paid the purchase price, that the bank held a mortgage executed by Ingle, it is difficult to understand how Parham could be an innocent purchaser as to the bank.

Touching the asserted estoppel, these reflections are pertinent: [4]   If, as the trial court found, Ingle, at the time of the delivery of the lambs to Parham, was acting as agent of plaintiff in the delivery, plaintiff having previously consented to the sale of the lambs, it necessarily follows that Ingle, as agent for plaintiff, was in possession of the lambs.   If the plaintiff was in possession of the lambs just prior to their delivery to Parham, it must have been by reason of the mortgage.   Under this theory, it was Ingle who consented to the sale being made by plaintiff who was selling them under the mortgage.   Just how this condition of affairs would estop plaintiff from asserting any claim against defendant Parham, in view of the want of any showing that he was misled to his prejudice is by no means clear.   (*Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596.)   It follows that plaintiff was entitled to judgment against defendant Parham.

The judgment and order appealed from are therefore reversed and the cause is remanded, with directions to enter judgment accordingly.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.