[Civil No. 3606. Filed November 25, 1935.]

[51 Pac. (2d) 248.]

C. P. STEPHENS, Appellant, v. ROBERT C. FOSTER, Appellee.

Messrs. Townsend & Jenckes, for Appellant.

Mr. T. A. Carson and Mr. J. P. Gross, for Appellee.

ROSS, J.—Plaintiff, Robert C. Foster, claiming to be the owner of a certain Hupmobile sedan, on March 9, 1934, brought this action against defendant, C. P. Stephens, for its possession, or its value placed at $400, and for damages for the loss of its use placed at $2,000. The case was tried before a jury and resulted in a verdict for the plaintiff in the sum of $650, apportioned $200 as the value of the car and $450 as damages for the loss of its use, upon which verdict judgment was entered.

While the action is in form replevin, in fact it only seeks to recover the value of the car and damages for the loss of its use. It appeared at the time of the commencement of the action that it was not possible for defendant to deliver the car to plaintiff because it was not in his possession or control, he having long since sold it.

The defendant, Stephens, has appealed and assigned several errors, which will be considered as we go along.

It is the contention of plaintiff, as alleged in his complaint, that he delivered the Hupmobile to defendant for demonstration purposes, with a view of ascertaining its trade-in value on either a De Soto or Plymouth in case he should determine to purchase a new car, and upon defendant's representation that he had sold the Hupmobile for $400, which representation was not true, and that he would not have delivered title thereto except upon such representation.

The defendant in its answer, in addition to a general denial, set up that he purchased plaintiff's Hupmobile for the sum of $400, to be applied on the agreed purchase price of $1,135 for a De Soto; and that he was ready, able, and willing at all times to carry out said contract on condition that plaintiff pay or secure the balance in the ordinary way. Also that he was ready, able, and willing to deliver to defendant a Plymouth on the same conditions, notwithstanding the contract was for a De Soto.

We first state the facts, indicating where conflicts occur. Stephens, during the years 1933 and 1934, was an automobile dealer, handling the De Soto and Plymouth automobiles, with his place of business in Phoenix, Arizona. Plaintiff, Foster, was the owner of said Hupmobile sedan. On June 2, 1933, plaintiff visited the former's place of business and inquired of

an employee what the trade-in value of his Hupmobile was, but was told that the appraiser was not in. He returned on June 4th and made the same inquiry of defendant, Stephens, who, after trying the car out, offered him $300 on a trade for either a Plymouth or De Soto, as plaintiff states. He rejected the offer of $300 and stated he would take nothing less than $400. Plaintiff left his automobile with Stephens and drove home in a De Soto loaned him by defendant. He returned on the 5th and was told by defendant that he had sold the Hupmobile to a third party for the sum of $400, and that plaintiff could pick out from his stock the car he wanted. On the same day the defendant sent one of his employees to plaintiff's home or office and got from plaintiff certificate of title to the Hupmobile and gave to plaintiff the following receipt:

"Rec'd of Dr. R. C. Foster one Hup Sedan & Title to same. . . . Appraisal value $400.00 on trade in."

The disagreement is as to the make of car plaintiff was entitled to, he claiming that he had the option to select either a Plymouth or a De Soto, and that he elected to take a Plymouth and so informed defendant, but that defendant insisted that the trade-in value of the Hupmobile was to be given on a De Soto only; whereas defendant testified that, although the $400 was to be applied on a De Soto only, to meet plaintiff's claim that it was to be applied on either a De Soto or Plymouth he tendered plaintiff the Plymouth upon condition that plaintiff would pay or secure balance in the usual way after crediting the $400. Plaintiff denied defendant had ever tendered him a Plymouth until March, 1934, in a former action over the same matter.

The defendant claims under the pleadings and evidence he was entitled to an instructed verdict and

that the court erred in not granting his motion therefor made at the close of plaintiff's case and renewed at the close of the whole case. The reason he assigns for such contention is that the plaintiff predicated his right to recover possession of car, or its value, on the refusal of the defendant to deliver it to him on the termination of a contract of bailment; whereas plaintiff admitted in his testimony at the trial that he had sold the car to defendant and delivered possession and title to him upon a contract to purchase an automobile of defendant. If the evidence had shown that the minds of the parties met as to the kind of automobile plaintiff was to get in trade for his Hupmobile, defendant's contention would be correct. Plaintiff contends when he turned the Hupmobile and the evidences of his title thereto over to defendant, he did so believing that the agreed price of $400 would be applied upon either a De Soto or Plymouth, at his election; and in accepting the Hupmobile at that price defendant contends he believed that such price could be used in a trade for a De Soto only. While plaintiff performed all the physical acts necessary to transfer title to defendant, there was, if the jury believed plaintiff, no meeting of the minds as to what he should receive for his Hupmobile or what defendant should pay him—whether with a De Soto or with a Plymouth. On the other hand, if the jury believed defendant's story, the title to the Hupmobile passed to defendant and the action of replevin would not lie. We think it was for the jury to say which one of the parties was telling the truth, and that the motion for an instructed verdict was properly denied.

The court instructed the jury, in effect, that if they believed from a preponderance of the evidence plaintiff was to have the right to elect whether he would take a De Soto or a Plymouth, and he did elect

to take a Plymouth and defendant refused to give him a Plymouth and credit the plaintiff with the agreed trade-in value of the Hupmobile, the verdict should be for plaintiff, otherwise for the defendant. This instruction is assigned as erroneous in that other essentials to plaintiff's right to recover were not covered by it, such as a demand for the Plymouth and refusal by defendant to deliver a Plymouth. The omission to include these essentials in the instructions could not have harmed defendant, the evidence being abundant that such demand and refusal were made. Indeed, defendant admitted as much and gave as his reason for refusal that the trade was for a De Soto and not a Plymouth. If defendant wanted a fuller instruction he should have requested it.

Defendant complains of the admission of evidence on the question of damages for the loss of the use of the car and also of an instruction on that question. The damages alleged in the complaint are that "the plaintiff has suffered great inconvenience and lack of transportation" by reason of defendant's detaining automobile from June 12, 1933, to June 22, 1934, the date of trial. The damages here claimed are nothing more than general. To deprive one of the use of his automobile means, if he rides to his place of business or for pleasure, he must rely upon a public carrier. He cannot go and come at his convenience, but must conform his movements to the convenience of others. The natural and immediate consequence of a wrongful taking or detention of one's automobile is to subject him to great inconvenience and leave him dependent upon others for transportation. We conclude that plaintiff by the allegations of his complaint has limited his claim to general damages or those that naturally flow from the wrong. If he suffered special damages by reason of being deprived of his

automobile, he should have pleaded such damages. 54 C. J. 511, § 187. The plaintiff testified that he was a physician connected with the United States Veterans' Bureau, but that he did some private practice. He estimated that his loss, occasioned by reason of not having his automobile, would be from ten to twenty dollars a month. After he made this statement, and after several other questions as to his private patients and practice, to which no objection was made, he was again asked by his attorney to estimate the loss he sustained in private practice, and he answered: " . . . approximately, somewhere from ten to twenty dollars a month." After all this evidence was in the record, defendant objected on the ground that the plaintiff was proving "special damages." We think this objection, if it had been made before the witness had testified at length upon the question, should have been sustained. There can be no question but that the loss of patients and income from private practice would be special damages. Defendant not only did not object to the evidence, but he made no motion to strike it. We cannot see therefore how it can be claimed that the trial court committed error in admitting it, the court not having been called upon to rule on the question.

■■ It is unquestionably very difficult to state or formulate a rule to guide the court or jury in arriving at the value of the use of an automobile when it is used only for the convenience and pleasure of its owner, as was the case here. While the courts have stated that the usable value of property recoverable by a successful party in replevin is estimated by the market price of the use of the property during the period of the wrongful detention (*State* v. *Foxley,* 68 Utah 41, 249 Pac. 125), it seems that they have not been able to define or delimit the particular kind of

evidence proper to prove such usable value. It is quite as impossible to definitely or accurately estimate in money the damages one suffers in the way of inconvenience when he is deprived of his automobile as it is to estimate in money the damages for pain and suffering, and it would seem that the rule of permitting the jury to exercise its good common sense and experience in one case might with equal propriety be the guide in the other. The defendant assigns the instruction of the court along that line as erroneous. The instruction reads:

"Now, there is no specific measure of damages which the court can give you in determining what the value of the use of that car is to the plaintiff, if you find for the plaintiff, and I want to instruct you at this time that the rental value of this car as testified to here by one of the witnesses is not the measure of damages which the plaintiff is entitled to recover. That is simply admissible here as bearing upon this entire issue to assist you, for whatever it is worth in determining what the reasonable value of the use of this car was to the plaintiff during that period of time, if you find that the plaintiff is entitled to recover any damages, and you will simply take all the evidence bearing upon that question. Don't render any verdict for damages for the use of the car against the defendant based upon any feeling of punishment or penalty or anything of that kind, but just take all the evidence which bears on that issue and determine what amount in your mind would fairly compensate the plaintiff for the loss of the use of that car from June 12th of last year down to the present time and fix that amount in your verdict in an amount (not) exceeding two thousand dollars, which is the amount plaintiff is praying for."

The court permitted a witness for the plaintiff to testify as to the rental value of a "Drive-ur-self" car and refused upon motion of the defendant to strike such evidence. The ruling on this motion is assigned as error. In *Consolidated Nat. Bank of*

*Tucson* v. *Cunningham,* 28 Ariz. 518, 238 Pac. 332, it was stated that such evidence, while not to be accepted as the measure of damages, might be considered by the jury for what it was worth in determining such damages. The instruction complained of follows the rule stated in the Cunningham case, *supra.*

 Finally, the defendant makes the following assignment of error:

"The court erred in instructing the jury during the argument to the jury by appellee's counsel, in the following language, to wit:

" 'The Court: Go ahead and proceed. I will say this, gentlemen of the jury, that you can only consider in determining whether or not there is fraud, from the evidence. The suit is not on fraud. Anything about fraud is merely for what it is worth in determining that issue.' "

If there is error in what the court said, it certainly is not obvious, and the assignment in and of itself does not give the language an explanation tending to harm or injure the defendant. In defendant's argument in his brief he states that there is no issue of fraud in the pleadings, which is true. He complains of the language used by counsel in his argument, but such language is not assigned as error. He says the court did not rebuke counsel, and from the assignment it cannot be determined that he should. In other words, the whole argument in the brief is directed to the improper conduct of plaintiff's counsel in his argument to the jury. Because the assignment does not show what it is predicated upon and is not of itself necessarily prejudicial, no error was committed.

For the reasons above set forth, the judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.