RASMUSSEN, Respondent, *v.* LEE & CO., INC., Appellant.

(No. 7,618.)

(Submitted March 4, 1937.   Decided March 19, 1937.)

[66 Pac. (2d) 119.]

*Messrs. Albert Anderson, H. S. Kline* and *R. F. Hibbs,* for Appellant, submitted a brief; *Mr. Hibbs* argued the cause orally.

*Mr. Harry L. Burns,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover possession of an automobile and for damages for its wrongful detention. The jury found for plaintiff for possession of the automobile and for $250 damages. Defendant's motion for a new trial was denied, and the appeal is from the judgment.

The controversy arose from the following salient facts: Defendant corporation is engaged in the business of financing automobile transactions. E. A. Shear, on November 28, 1934, took delivery of the car in question at the Studebaker factory, defendant paying for the car. Shear at that time was engaged as a dealer in automobiles at Havre, acting under the name of the Motor Service Company. At the time the car was taken from the factory a conditional sales contract was arranged, showing the Motor Service Company as the seller and Shear as the purchaser, providing for periodical payments and by which title to the car was to remain in the seller until full payment of the purchase price. The Motor Service Company assigned its right in the contract to defendant. The conditional sales contract, with the assignment, was filed with the registrar of motor vehicles on December 7, 1934. Shear took possession of the car, using it for a time as a demonstrator, and thereafter sold it to plaintiff. Plaintiff applied for and received a certificate of title from the registrar of motor vehicles. He retained possession of the car until September 21, 1935, a period of about nine months, when he traded it to Shear as a down payment on a

new 1936 Studebaker, to be delivered about October 10th. At the time of the trade plaintiff signed his certificate of title and 1935 motor vehicle registration card, but not before a notary public, and delivered them to Shear, leaving the name of the purchaser blank. About October 1 Shear forwarded these papers to defendant and by telephone conversation authorized it to take possession of the car, with the understanding that defendant should sell it and apply the proceeds as a credit on a debt owing by Shear to defendant. Shear thereafter disappeared and never delivered the new Studebaker to plaintiff. Plaintiff then brought this action. Other facts will be alluded to in the discussion of the several assignments of error.

The first assignment predicates error upon the court's refusal to strike certain testimony. It appears from the record that when plaintiff was in possession of the car in question it became damaged in a wreck. Evidently to minimize plaintiff's damage, defendant's counsel, on recross-examination of plaintiff, attempted to develop the fact that if the car was not in condition for use, plaintiff could not have suffered damage. Plaintiff's counsel on redirect examination asked the following question of plaintiff: "If you had been able to get the car back, you would have fixed it within a day or two, wouldn't you?" He answered: "Yes." After the question was answered defendant's counsel moved to strike the answer, upon the ground that it was a conclusion. There are many cases holding that the objection came too late. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33; *Genzberger* v. *Adams,* 62 Mont. 430, 205 Pac. 658; *Downs* v. *Cassidy,* 47 Mont. 471, 133 Pac. 106, Ann. Cas. 1915B, 1155.)

It should be noted here that defendant did not ask to have the testimony stricken on the ground that the answer was so spontaneous and sudden as not to afford an opportunity for objection before the answer was given. But whether or not we apply the rule announced in the foregoing cases to the situation here, we think the evidence was harmless, in view of the fact that other evidence was presented showing that it actually

took a week's time to repair the car, and hence the jury could not have been swayed by the evidence complained of.

Complaint is also made of the court's ruling in allowing evidence to be introduced, over defendant's objection, on cross-examination, showing that the witness Lee, a witness for defendant and president of the defendant company, had asked plaintiff to sign an affidavit fixing the date of the damage to the car prior to September 18th, in order to collect insurance for the damage done to it. The particular question objected to was the following: "Isn't it true that in that conversation you asked Mr. Rasmussen to sign an affidavit placing the date of the accident to his car prior to September 18th so that you might collect insurance for the damage to it?" The objection being overruled, the answer was in the negative. Plaintiff was then called in rebuttal and without objection testified: "As to that conversation, he wanted me to sign an affidavit saying that I wrecked the car before the 18th of September, so he could collect insurance. I did not sign that affidavit." Jack Danes testified in rebuttal to the same effect over objection.

Plaintiff contends that defendant opened the door for the admission of the testimony complained of, by first introducing a part of the conversation relating to the car. Lee had testified on direct examination as follows: "I had a conversation with Mr. Rasmussen after this action was commenced. That was about fourteen or fifteen miles south of Chinook, and about October 20th, I believe. We talked about this car at that time. Mr. Rasumssen told me then about his sale of the car to Shear; he told me he had traded it in on a 1936 model."

Since a part of the conversation on the subject of the car in question was introduced by defendant, plaintiff had the right to introduce the whole thereof on the same subject. (Sec. 10515, Rev. Codes; *McGonigle* v. *Prudential Ins. Co.,* 100 Mont. 203, 46 Pac. (2d) 687.)

The principal contention made by defendant is that the court erred in denying its motion for directed verdict. The main argument on this point is based upon the conditional sales contract which defendant contends afforded absolute protection

to it as against subsequent purchasers or encumbrancers. It relies upon section 1758.3, Revised Codes 1935, which provides in part: "Whenever a mortgagee in a chattel mortgage deposits with the registrar of motor vehicles the original, or a copy of said mortgage accompanied by a certificate of a notary certifying to the same as a true and correct copy of the original, the said mortgagee shall be registered as the legal owner under the provisions of this Act, or whenever a conditional sales vendor deposits with the registrar a conditional sales contract or a copy thereof accompanied by a certificate of a notary public certifying to the same as a true and correct copy of the original, the said conditional sales vendor shall be registered as the legal owner under the provisions of this Act. Such registration and the depositing of said mortgage or conditional sales contract or a copy thereof shall be constructive notice of the said mortgage or contract and its contents to subsequent purchasers or encumbrancers."

We think the weight of authority and the better-reasoned cases, under facts such as we have here, are in favor of the trial court's ruling. The courts invoke the doctrine of estoppel to protect the purchaser where, as here, the owner places the property in the hands of an established dealer with actual or apparent authority to sell. Thus in *General Securities Corp.* v. *Reo Motor Car Co.,* 91 Cal. App. 16, 266 Pac. 576, 578, the court said: "In the case at bar the owner of the automobile placed it in the hands of a dealer who was engaged in the business of buying and selling automobiles and authorized him to place it on sale to the general public. Defendant undoubtedly allowed Stewart to appear as the owner of the car, or at least as having 'full power of disposition' over it. Plaintiff had no notice whatever of any claim of ownership by any one other than Stewart. Plaintiff was undoubtedly an innocent party in the transaction and its rights should be protected. If Stewart failed in his duty toward defendant, the responsibility does not rest with plaintiff, who was dealing with Stewart at arms' length. Defendant cannot escape liability by showing that an investigation on the part of plaintiff would have disclosed that the automobile

was not registered in Stewart's name. We know of no rule which, in the absence of circumstances putting him on guard, requires the purchaser of personal property from a dealer at a regularly established place of business to commence an investigation to determine the status of the title of the dealer having possession of the article offered for sale.'' Other cases of like import are the following: *Indiana Investment & Securities Co.* v. *Whisman,* 85 Ind. App. 109, 138 N. E. 512; *Western States Acceptance Corp..* v. *Bank of Italy,* 104 Cal. App. 19, 285 Pac. 340; *California Standard Finance Corp.* v. *Riverside Finance Co.,* 111 Cal. App. 151, 295 Pac. 555; *Carter* v. *Rowley,* 59 Cal. App. 486, 211 Pac. 267; *Chucovich* v. *San Francisco Securities Corp.,* 60 Cal. App. 700, 214 Pac. 263; *M. & M. Securities Co.* v. *General Motors Acceptance Corp.,* (Mo. App.) 79 S. W. (2d) 521; *Universal Credit Co.* v. *Reily,* 171 Okl. 286, 42 Pac. (2d) 516; *Glass* v. *Continental Guaranty Corp.,* 81 Fla. 687, 88 So. 876, 25 A. L. R. 312; *American Aggregates Corp.* v. *Wente,* 100 Ind. App. 59, 190 N. E. 552; *Scruggs* v. *Crockett Automobile Co.,* (Tex. Civ. App.) 41 S. W. (2d) 509.

We are aware that in some of the foregoing cases the title instrument was not of record as was the case here; however, we think that circumstance immaterial. We think it is not incumbent upon one purchasing from a regular dealer to make inquiry concerning the condition of the title. Moreover, if plaintiff were to be chargeable with knowledge of the recorded conditional sales contract, he still, under the facts here, had the right to conclude that Shear was merely the agent for defendant (*Commercial Credit Co.* v. *Blair,* 84 Mont. 314, 275 Pac. 748), and that defendant was consenting to the sale and was looking to Shear or the Motor Service Company for the payments due it (*Universal Credit Co.* v. *Reily,* supra), and hence was waiving its interest in the property itself. (*Luther* v. *Lee,* 62 Mont. 174, 204 Pac. 365.)

Defendant relies upon the case of *Finance & Guaranty Co.* v. *Defiance Motor Truck Co.,* 145 Md. 94, 125 Atl. 585. That case supports its contention, but we think it is out of harmony with the better-reasoned cases. The force of that opinion,

moreover, was cut down somewhat by the later case of *Winakur* v. *Sapourn*, 156 Md. 662, 145 Atl. 342.

What has already been said disposes of defendant's contention that it was error to give instruction No. 5, reading: ''You are instructed that the duty rests upon one financing a retail dealer in automobiles to see to it that cars upon which the one financing has a lien or other interest are not left under the domain or control of such retail dealer on his salesroom floor to be offered to the public for sale.''

Defendant next contends that it was entitled to a directed verdict because of the subsequent transfer of the car by Shear to it after plaintiff surrendered it to Shear as the down payment on a new car. As before stated, plaintiff simply signed the title papers, leaving the name of the purchaser blank. These papers were then delivered to defendant under an oral understanding that defendant should sell the car and apply the proceeds on the indebtedness owing from Shear to defendant. There was no definite amount agreed upon as the value of the car. The arrangement was simply one by which defendant became Shear's agent to sell the car and apply the proceeds as stated. There was no sale in fact consummated between Shear and defendant.

Defendant relies upon section 6881, Revised Codes, reading: ''Where the possession of personal property, together with a power to dispose thereof, is transferred by its owner to another person, an executed sale by the latter, while in possession, to a buyer in good faith and in the ordinary course of business, for value, transfers to such buyer the title of the former owner, though he may be entitled to rescind, and does rescind, the transfer made by him.'' As has already been pointed out, there was no executed sale of the property by Shear to defendant, nor did defendant pay, or obligate itself to pay, anything for the attempted transfer so as to become an innocent purchaser. (Compare *National Bank of Gallatin Valley* v. *Ingle*, 53 Mont. 414, 164 Pac. 535.) While the cancellation or satisfaction of an antecedent debt constitutes a sufficient consideration for a transfer (sec. 8432, Id.) and may make the transferee a bona

fide purchaser (*Hackney* v. *Birely,* 67 Mont. 155, 215 Pac. 642), the mere transfer of property to secure an antecedent debt does not make the transferee an innocent purchaser. (*Foster* v. *Winstanley,* 39 Mont. 314, 102 Pac. 574; and compare *Helena & Livingston Smelting & Refining Co.* v. *Northern Pac. Ry. Co.,* 62 Mont. 281, 205 Pac. 224, 21 A. L. R. 1080.)

The court properly denied the motion for directed verdict.

Complaint is made of the following instruction: "You are instructed that if you believe from a fair preponderance of the evidence herein that the defendant did convert and dispose of to its own use the automobile owned by plaintiff and described in the complaint herein, that plaintiff would then be entitled to damages amounting to the value of the use of said automobile for the time during which it was detained by the defendant, and if you further believe from a fair preponderance of the evidence herein that the plaintiff expended any time or money in the pursuit of his property, then you will determine such amount and include the same in your verdict." Defendant contends that this instruction assumes as a fact that plaintiff was the owner of the automobile in question. The instruction, as will be noted, dealt with the question of damages. By other instructions given the jury was fairly advised that plaintiff could not recover without proving that he was the owner of the car. The instruction complained of might well have been worded differently, but we think the jury could not have been misled by it when read in connection with the other instructions. It is prefaced by the words "if you believe," and we think when read in conjunction with the other paragraphs of the charge, the jury understood that before plaintiff could recover at all, ownership must be proved, leaving the question of damages to be determined only in the event that plaintiff's ownership was first established.

The last contention of defendant is that the evidence is insufficient to support the verdict for $250 damages. Defendant contends that plaintiff's right of action did not accrue until he demanded possession from it. The evidence shows that defendant had taken possession of the car from Shear about

September 26, 1935, knowing at that time that a sale had been made to Rasmussen. Mr. Lee, acting for defendant, ordered Mr. Emery, who was in charge of the garage in the absence of Shear, to "hold possession of the car." Defendant did not obtain the certificate of title and registration card signed by plaintiff until about October 1st. Hence, at the time defendant took possession thereof, it had no right to do so. Its original taking was therefore wrongful. It being wrongful from its inception, the rule is different from a case wherein defendant rightfully obtained possession. In the latter case a demand is necessary to terminate the right, whereas in the former no demand is necessary as a condition of maintaining the action. (54 C. J. 450.) Moreover, a demand is unnecessary where, as here, it appears that a demand, if made, would have been futile and unavailing. (54 C. J. 452.) Here it appears that plaintiff did make a demand for possession of the car after the defendant held the certificate of title signed by plaintiff, and the demand was refused. Defendant's contention is that damages can only start to accrue after the demand. We think this cannot be so where, as here, the original taking was unlawful.

The evidence shows that plaintiff was deprived of the possession of the car for nearly a month. He testified that he had use for his car in conducting his business of selling automobiles and that he was obliged to hire another car; that he was damaged to that extent in the sum of $200; and that he made about twelve trips from Chinook to Havre in pursuit of his car, which damaged him to the extent of $50. This was also a proper element of damages. (54 C. J. 629.) The matter of fixing the damages in such a case is left largely to the discretion of the jury. The supreme court of Arizona, in *Stephens* v. *Foster*, 46 Ariz. 391, 51 Pac. (2d) 248, 251, in speaking of the difficulty of arriving at damages in such a case as this, said: "While the courts have stated that the usable value of property recoverable by a successful party in replevin is estimated by the market price of the use of the property during the period of the wrongful detention * * * , it seems that they have not been able to define or delimit the particular kind of evidence

proper to prove such usable value. It is quite as impossible to definitely or accurately estimate in money the damages one suffers in the way of inconvenience when he is deprived of his automobile as it is to estimate in money the damages for pain and suffering, and it would seem that the rule of permitting the jury to exercise its good common sense and experience in one case might with equal propriety be the guide in the other.''

It is contended by defendant that plaintiff's evidence is in the nature of a conclusion, and hence cannot be resorted to to support the verdict. The owner of property may testify to its value. (*Klind* v. *Valley County Bank of Hinsdale,* 69 Mont. 386, 222 Pac. 439; *Vukmanovich* v. *State Assur. Co.,* 82 Mont. 52, 264 Pac. 933.) We think if plaintiff was competent to state the value of his car, he was competent to state what the value of its use would have been to him, and that is the effect of his testimony. If defendant desired to know more of the basis upon which he rested the conclusion, it had a right to develop such facts on cross-examination.

The verdict is large in view of the fact that the car had to be repaired before it could be used, which the evidence showed took about a week's time, but since there is some evidence to support it and it having been approved by the trial judge, we cannot disturb it on this account.

The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.