521 P.2d 1139

AMERICAN HONDA MOTOR CO., INC., a California corporation; and Honda Motor Co., Ltd., a Japanese corporation, Appellants,

v.

Ken D. SMITH, Appellee.

No. 11510–PR.

Supreme Court of Arizona, In Banc.

May 8, 1974.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Thomas A. McGuire, Jr., Phoenix, for appellants.

Hughes, Hughes & Conlan, by Coit I. Hughes and John C. Hughes, Phoenix, for appellee.

HOLOHAN, Justice.

This is an appeal from a judgment for the plaintiff Ken D. Smith against the defendants for damages arising out of a motorcycle accident. The Court of Appeals affirmed the judgment in 21 Ariz.App. 255, 518 P.2d 131 (1974). We granted review. The opinion of the Court of Appeals is vacated.

The plaintiff was seriously injured in an accident while riding his recently purchased motorcycle. It was plaintiff's contention that there was a defect in the manufacture of the motorcycle, and the defect caused the accident. The action was tried on theories of tort and breach of warranty. The jury found for the plaintiff and assessed damages in the sum of $112,000.

In their appeal the defendants raised several issues, but our decision makes it necessary to consider only one issue, namely, whether the trial court erred in allowing certain evidence to be admitted over the objection of defendants.

The injuries received by the plaintiff in the accident caused him to be unable to remember any of the events immediately preceding or following the accident. There were no witnesses to the accident. The plaintiff sought to reconstruct the facts from the physical evidence at the accident. Plaintiff employed an expert to examine the motorcycle and to reconstruct the facts of the accident.

Plaintiff's expert in his examination of the motorcycle found that a "retainer flange"—a small metal strip which is normally bent against a nut to prevent it from turning—had been bent away from the nut on the rear wheel sprocket, and the nut was missing from its proper place. From certain marks on the motorcycle the expert concluded that the nut had worked loose because the retainer flange did not hold it properly, and the nut had come out of its place, been carried by the chain, and finally wedged against a portion of the body and chain with sufficient force to stop the chain from moving.

It was, of course, plaintiff's theory that the flange bent the wrong way was a factory defect. In addition to showing the defect it was necessary for plaintiff to establish that the defect was the cause of the accident. To establish causation the plaintiff relied upon his expert. In part, the expert testified as follows:

"Q Mr. Severy, as a result of your experience and your training, do you have an opinion as to what caused the accident to take place?

"MR. McGUIRE: No foundation, your Honor. We don't have any accident in evidence.

"*    *    *    *    *    *

"Q Mr. Severy, did you have related to you how the damage occurred, how the outside damage occurred to the motorcycle, exhibit A?

"MR. McGUIRE: It would be hearsay, your Honor.

"THE COURT: Well, you may answer that question.

"A (BY THE WITNESS) Yes.

"Q Who was it that related that to you?

"A Well, initially it was an attorney, I believe that—before you gentlemen were in the case as I understand it—related the material to me. It was my first contact with it.

"There may have been additionally—I would have to refer to my notes as to whether I received information from anyone else. I just don't have any independent recollection.

"*    *    *    *    *    *

"Q . . . Mr. Severy, assuming that the bike was in motion at any speed, do you have an opinion as to what would have caused the external damage to the bike?

"A Yes. It is consistent with an upset, being that the bike went off from its wheels and stopped traveling in a normal manner.

"Q And what is your opinion as to what was the cause of the upset?

"MR. McGUIRE: The same objection. We don't have any facts that allow him to testify to that. He wasn't there. Nobody was there that remembers it.

"THE COURT: You may answer the question.

"A (BY THE WITNESS) Yes, in my opinion the situation that I have described.

"MR. McGUIRE: Did that question—I am sorry. Did that call for a yes or not, 'Do you have an opinion?'

"MR. HUGHES: He said yes, he did.

"MR. McGUIRE: I believe he has already testified that the bolt locking up would cause it but—

"THE COURT: You may read back the question.

(The question was read back.)

"MR. McGUIRE: Let me object to the question, your Honor. There is no evidence in this record which would allow Mr. Severy to state an opinion as to what caused an upset of this bike under the conditions that existed. We don't know speed. We don't know the location on the road. We don't know if it was going straight. He's made statements as to a motorcycle on a curve. We don't know if there was a curve in the road, or if the motorcycle was on a curve. We don't have any facts sufficient as to allow a statement to that time and place.

\*    \*    \*    \*    \*    \*

"A (BY THE WITNESS) Yes. The detachment of the nut from the rear wheel sprocket and its entanglement with the structure, as I pointed out, would either lock up or greatly diminish the rota-tion of the rear wheel, so that loss of control would occur, or could occur, depending upon the circumstances of the —whether it's in a turn or straight ahead and things of that sort, and that subsequent loss of control would lead to an upset, the bike going off from its wheels and the damage in terms of abrasions to the bike could then result."

The defendants urge that the testimony of the expert was not admissible because it was based on hearsay and matters which had not been received in evidence. We agree.

An expert is not limited to giving an opinion on matters he personally observed, but, before he may express an opinion on matters observed by others, such observations must have been received in evidence through the testimony of the observers. Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962). Hypothetical questions to experts are a proper method of securing his opinion, but the hypothetical question must be based on facts in evidence. Schmidt v. Gibbons, 101 Ariz. 222, 418 P.2d 378 (1966). An expert may not give an opinion based in part upon statements made to him outside of the courtroom and not received in evidence. Security Benefit Association v. Small, 34 Ariz. 458, 272 P. 647 (1928); Gray v. Woods, 84 Ariz. 87, 324 P.2d 220 (1958). The purpose of this rule is to prevent the expert from basing his testimony on assumptions which are unknown to the jury and unsupported by the evidence. Gillespie Land and Irrigation Company v. Gonzalez, 93 Ariz. 152, 379 P.2d 135 (1963).

The plaintiff argues that the objections made by defendants were insufficient to raise the issue, and therefore cannot be argued on appeal, and that one objection, whether proper or not, was not ruled upon, and the witness was permitted to answer. We believe that the objections were sufficiently clear and specific to raise the issue and that they were ruled on, and that the rulings permitting answers to the questions were reversible error.

In addition the issue was raised again by defendants at the close of the plaintiff's evidence when they moved to strike those parts of the expert's testimony which contained opinions as to causation, because there was no factual predicate for them and they were based on hearsay. The defense stated to the court that although the court had ruled on the question, it renewed its objection and made a motion to strike. The court denied the motions.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.