556 P.2d 1143

**BALL CORPORATION, a foreign corporation, Appellant,**

v.

**Chester GEORGE and Irene George, his wife, Appellees.**

**No. 1 CA–CIV 2734.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 28, 1976.

Rehearing Denied Nov. 3, 1976.

Petition for Review Denied Dec. 7, 1976.

Jennings, Strouss & Salmon by Gary L. Stuart, Neil Vincent Wake, Phoenix, for appellant.

Skousen, McLaws & Skousen, P. C. by Richard E. Skousen, Mesa, for appellees.

FROEB, Judge.

This is an appeal from a judgment in favor of appellees, Chester George and Irene George, and against appellant, Ball Corporation (Ball), for injuries received by Irene George when a soft drink bottle exploded.

Irene George purchased a 32 ounce bottle of Pepsi-Cola from a beverage retailer in mid-August, 1970. The bottle was placed in a cardboard beverage carton and was stored next to the refrigerator in the George house. It remained undisturbed until August 22, 1970, when, as Irene George was reaching down for the bottle, it exploded, flinging particles of glass into her left eye. She was immediately rushed to a hospital, but doctors were unable to save the eye.

Mr. and Mrs. George brought a lawsuit against Ball, the manufacturer of the bottle, Pepsi-Cola Metropolitan Bottling Co., Inc. (Pepsi-Cola), the bottling company, and Food City, Inc. (Food City), the retailer. Due to a covenant not to sue between the Georges, Pepsi-Cola and Food City, Pepsi-Cola and Food City were dismissed from the lawsuit and the trial proceeded against Ball as the sole defendant. Although several grounds for recovery were alleged by the Georges in their complaint, the case was submitted to the jury solely on the basis of strict liability in tort under the Restatement (Second) of Torts § 402(A). The evidence as to liability presented at trial consisted primarily of testimony by Irene George and two experts, Dr. Julian R. Frederick and Dr. Richard E. Mould. The jury returned a verdict in favor of the Georges in the amount of $125,000.00.

Under the doctrine of strict liability in tort, one engaged in the business of selling a product is liable for physical injury to a user or consumer of that product if it is sold in a defective condition which is

unreasonably dangerous and if it reaches the user or consumer without substantial change in the condition in which it was sold. *O. S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968).

Ball's primary contention on appeal concerns the sufficiency of the evidence presented to prove the defective condition of the bottle at the time it left Ball's manufacturing plant. During the trial, Irene George testified that the bottle had not been subjected to any unusual blows or rough handling after it was purchased from Food City. She also testified that she had barely touched the bottle when it exploded.

Dr. Frederick testified that he had studied the glass fragments of the Pepsi-Cola bottle in order to reconstruct the fracture pattern of the glass. He stated that the information derived from the fragments enabled him to form an opinion as to the cause of the bottle failure, and that the failure had been due to an explosion at a point on the bottle at which the glass was defectively thin. He testified that the glass thickness of the Pepsi-Cola bottle ranged from .074 inches at the point of the failure to as much as .150 inches for thicker portions of the bottle on the side opposite the point of failure. He further testified that, in his opinion, a glass bottle with a minimum thickness of less than .080 inches, designed for three and one-half volumes of gas pressure, was defective. Finally Dr. Frederick testified that the bottle had been weakened by a bruise caused by normal handling of the bottle.

Ball argues that Dr. Frederick's quantitative opinion as to minimum bottle thickness was not based on either reliable scientific tests performed by him, or on an accurate interpretation of information found in scientific journals. It further argues that Dr. Frederick's testimony as to the existence of a prior bruise caused by normal handling was based solely on conjecture and, as such, was inadmissible.

As to Dr. Frederick's quantitative opinion regarding the defective minimum thickness of the Pepsi-Cola bottle, Ball does not object to Dr. Frederick's overall qualification as an expert or his ability to properly give such an opinion. It does object, however, to the manner in which Dr. Frederick arrived at his estimate of a safe minimum glass thickness.

■ Dr. Frederick testified that his estimate was based on his study of scientific reports written on the subject, his experience in analyzing the structural properties of glass, and tests which he had performed. When questioned as to the nature of the tests, he testified that he had applied sufficient force to break various glass bottles and then measured the wall thickness of bottles at the point of the break. He did not measure the amounts of force applied to break the bottles. Ball contends that his failure to measure the amounts of force applied to the bottles makes the tests meaningless and testimony concerning the results inadmissible. It relies on *American Honda Motor Co. v. Smith,* 110 Ariz. 593, 521 P.2d 1139 (1974) and *Carrizoza v. Zahn,* 21 Ariz.App. 94, 515 P.2d 1192 (1973) to support its contention. However, the opinions by the experts in both *American Honda* and *Carrizoza* were based on assumptions which were not solely products of their training and expertise. Instead, the assumptions were founded upon facts which either had not been introduced into evidence, or had no foundation. In that respect, they differ from the testimony of Dr. Frederick, whose expert opinion as to defective minimum thickness was based on a personal analysis of the Pepsi-Cola bottle fragments, combined with his training and experience in analyzing the structural properties of glass. In addition, the testimony of Mrs. George as to how the explosion occurred was in evidence and could properly be considered by Dr. Frederick in formulating his opinion under both of the authorities cited by Ball. Any objections to his testimony under such circumstances go to the weight and not the admissibility of his opinion.

Similarly, Ball's objection to Dr. Frederick's testimony of a prior bruise to the bottle is also without merit. Dr. Frederick testified that an explosion such as occurred in this case probably was the result of static fatigue of the glass. He said that static fatigue would not occur unless the glass suffered a bruise at some time. He was unable to identify the prior existence of a bruise from the glass fragments he studied, but he testified that, had the force which caused the bruise been greater than that encountered in normal handling, the fracture pattern of the glass would have been noticeably different. Again, the testimony was a product of Dr. Frederick's training and expertise, coupled with his analysis of the glass fracture pattern and the testimony of Irene George as to how the explosion occurred. Again, the objection goes to weight, not admissibility.

We note that attorneys for Ball engaged Dr. Frederick in extensive cross-examination and put the testimony of their own expert, Dr. Mould, into evidence to refute the opinions of Dr. Frederick. The jury was presented with two distinct theories as to the cause of the explosion and the facts on which each of those theories were founded. The jury chose to accept the theory offered by Dr. Frederick, a theory which was supported by the evidence presented at the trial.[1]

As there was sufficient evidence to support the jury's verdict, it will not be overturned on appeal.

Several additional errors are urged by Ball. It argues that the trial court erred in failing to give a jury instruction on assumption of risk; that it erred in instructing the jury on loss of earning capacity by Irene George; that it erred in allowing testimony concerning the deterioration of eyesight in Irene George's uninjured (right) eye following the accident; and

finally, that, in any event, Ball is entitled to a setoff as a result of the covenant not to sue between the Georges, Pepsi-Cola and Food City.

The first error urged by Ball, the failure to instruct the jury on assumption of risk, is based on testimony by Mrs. George that she was aware that a glass bottle could break and the testimony of Dr. Mould that the fracture pattern of the bottle indicated that it had been struck by a severe external force. Ball argues that such facts support the giving of an assumption of risk instruction. Although assumption of risk is a potential defense to an action for strict liability in tort, the facts in this case do not support the giving of an instruction on assumption of risk. The court in *O. S. Stapley Co. v. Miller,* supra, discussed the defense in strict liability cases, and indicated that it is applicable where the plaintiff discovers the existence of a defect in a product, but nonetheless uses it. There is no evidence in this case that Irene George was aware of a defect in the bottle prior to the time it exploded. The trial court's refusal to give the assumption of risk instruction was proper. *Tucson Utility Supplies, Inc v. Gallagher,* 102 Ariz. 499, 433 P.2d 629 (1967).

Ball argues that it was error for the court to instruct the jury to find the amount of damages which would reasonably and fairly compensate the plaintiff for "any decrease in earning power or capacity by the Plaintiff in the future." Ball argues that the absence of evidence that Irene George had a desire to enter the labor market after the accident made the giving of this instruction improper.

The evidence at trial revealed that Irene George had worked in a school cafeteria approximately two days per week prior to the accident. Furthermore, there

---

1. Courts in other jurisdictions have allowed recoveries in actions based on strict liability in tort, even in the absence of expert testimony, where circumstantial evidence of a defect is presented. For a discussion of these cases, see: Annot., *Products Liability: Proof of Defect under Doctrine of Strict Liability in Tort,* 51 A.L.R. 3rd 8, § 12.

was testimony that her vision was permanently impaired as a result of the accident. This was sufficient evidence that she possessed the ability to earn money, and that this ability had been permanently diminished due to the accident. However, even if Irene George had never been employed outside her home, the giving of the instruction would have been warranted as long as she could demonstrate the ability to earn money. As stated in *Mandelbaum v. Knutson,* 11 Ariz.App. 148, 462 P.2d 841 (1969):

. . . However, loss of earning capacity, as an item of *general* damage, can be presented to a jury to weigh all the factors and they, by experience and common sense, can arrive at a proper monetary value, without recourse to actual past earnings. *Goldstein v. Sklar,* Me., 216 A.2d 298 (1966). In this sense the jury's task is akin to their fixing a dollar value for pain and suffering.

However, this does not obviate the requirement of proof that the plaintiff does have an earning capacity. He must show that potentially, at least, he has an ability to acquire *money.*

\*    \*    \*    \*    \*    \*

We believe that all that is required in Arizona is that plaintiff show a permanent diminution of earning capacity and his capacity to earn money. This means for example, as has many times been held, that a housewife who has never earned any wages can receive compensation for loss of her capacity to earn the wages for her skills. No past earnings or even evidence of her general value need be proved. [11 Ariz.App. at 151, 462 P.2d at 844].

■ Contrary to Ball's contention, there is no requirement that Irene George present testimony that she desired to enter the labor market in order for her to receive compensation for loss of earning capacity.

Ball's next argument, that the court erred in allowing testimony concerning deterioration of Irene George's *right* eye following the accident, is based on the fact that there was no evidence connecting subsequent deterioration of the uninjured (right) eye to the accident. Consequently, Ball argues that testimony concerning the deterioration and Irene George's resulting fear of total blindness was irrelevant and highly prejudicial.

■ Irene George testified at the trial that she did not have problems with her vision prior to the accident, but that her right eye required correction following the accident. She also testified that she had difficulty reading, driving an automobile and doing household chores due to her impaired vision. Chester George also testified concerning the problems Irene George experienced with her right eye. No objection was made by counsel for Ball to either the testimony of Irene George or that of her husband concerning the problems she experienced with her right eye. However, when a physician who had treated Irene George later testified that the problem she experienced with her right eye was not related to the accident, but was instead due to an infection, counsel for Ball objected to further testimony concerning the condition of Irene George's right eye. The objection was sustained. In the absence of objection to the testimony when it was presented or a motion to strike such testimony thereafter, Ball cannot claim that the trial court committed error in admitting it. *Stephens v. Foster,* 46 Ariz. 391, 51 P.2d 248 (1935).

Ball's final argument on appeal, that the covenant between the Georges, Pepsi-Cola and Food City, entitles it to a setoff against the judgment equal to the value of the covenant, is also *without* merit.

■ As a result of the covenant not to sue, Pepsi-Cola and Food City were dismissed as parties to the complaint prior to trial. The covenant provided that, in the

event of either a judgment for Ball after trial or a settlement by Ball for $25,000 or more, Pepsi-Cola and Food City would pay the Georges a total of $30,000. If judgment was against Ball but was less than $30,000, Pepsi-Cola and Food City were required to pay the difference between the amount of the judgment and $30,000 to the Georges. If there was either a judgment against Ball for more than $30,000 or if the Georges settled with Ball for less than $25,000, Pepsi-Cola and Food City were not required to make any payment to the Georges. As the result of the $125,000 judgment against Ball, Pepsi-Cola and Food City did not have to make any payments to the Georges.

Ordinarily, any amount received for the release of one joint tortfeasor must be credited to any judgment received against the other. There can be no double recovery. *Adams v. Dion,* 109 Ariz. 308, 509 P.2d 201 (1973). Here, however, no amount of money or its equivalent was ever received by the Georges from either Pepsi-Cola or Food City.

Ball argues that the bare contract right obtained by the Georges as a result of the covenant has some value which should be set off against the judgment. However, the extent of the contract value was entirely contingent on the outcome of the proceedings against Ball. No money was to pass until the trial was completed. Since the judgment against Ball exceeded $30,000, under the covenant the Georges are not entitled to any compensation from Pepsi-Cola or Food City. Consequently, Ball is not entitled to a setoff for a potential transfer of benefits which never occurred.

The judgment of the trial court is affirmed.

DONOFRIO, P. J., and OGG, J., concur.