[Civil No. 3787.   Filed April 19, 1937.]

[67 Pac. (2d) 226.]

CITY OF PHOENIX, a Municipal Corporation, and CHARLES TORSON and T. M. TORSON, Co-partners, Doing Business Under the Firm Name and Style of TORSON CONSTRUCTION COMPANY, Appellants, v. MARY PARKER, Appellee.

Mr. Irving A. Jennings, Mr. Frank W. Beer, Mr. Frank H. Swenson, and Messrs. Townsend & Jenckes, for Appellants.

Messrs. Cox & Moore, for Appellee.

ROSS, J.—This is an action by Mary Parker against the City of Phoenix and Charles Torson and T. M. Torson, copartners, doing business under the name of Torson Construction Company, for damages for personal injuries sustained by her on the night of July 5, 1935, when she fell, as she alleges, into an open, unguarded, and unlighted ditch or excavation, at the

intersection of Seventh Avenue and Mongolian Street, made and excavated by defendants to be used as a part of the city's storm sewer system then in course of construction. Seventh Avenue and Mongolian Street at their intersection are outside the city limits but are public highways. The Torson Construction Company had the contract with the city to install the storm sewer system and had dug such ditch or excavation as an outlet extension of the system. The contractor filed an answer denying generally the allegations of the complaint and pleading contributory negligence. The city's answer consists of a general demurrer and a general denial.

The case was tried to a jury, which returned a verdict against the defendants for the sum of $9,200, and from the judgment entered thereon and the order overruling the motion for new trial the defendants have appealed.

The court instructed the jury that under the contract between the city and the contractor the city was not relieved from the duty to keep the place of the work in a safe condition, and if under the evidence and instructions they found for plaintiff, the verdict should be against both the city and the contractor. This instruction, it is said, is erroneous for the reason it makes the city liable for the tortious acts of the contractor, which was an independent contractor.

The common-law duty of the city to keep its streets in a reasonably safe condition for persons using them is not involved, since the place where the plaintiff is claimed to have been injured is outside the city limits.

The only question, then, is as to whether the Torson Construction Company was an independent contractor or a servant of the city in doing the work of installing the sewer system. If the city retained the control, or right to control, the contractor and its

employees as to the manner in which they were to perform the contract, the instruction was correct; but if the contract called for a completed and finished job, or a stated physical result, leaving to the contractor the manner of doing it, then the contractor in doing it was independent and it only was liable. *Lee Moor Contracting Co.* v. *Blanton, ante,* p. 130, 65 Pac. (2d) 35; *Consolidated Motors, Inc.,* v. *Ketcham, ante,* p. 295, 66 Pac. (2d) 246, decided March 29, 1937, by this court.

The only evidence in the record of the relation of the city to the contractor is the contract itself. The improvement was what is known as a PWA project and the funds to pay for it were advanced by the national government. By reason thereof, the terms of the contract included many conditions inserted to make it conform with the PWA Code. Including proposals, plans, specifications, bidding requirements, general conditions, etc., it covers some two hundred pages. It is too voluminous to insert here. The gist of it is contained in article 1 thereof, reading as follows:

"The Contractor shall construct and complete in good, workmanlike, substantial manner and to the satisfaction of the City Engineer of the City of Phoenix, and of the Government Engineer, Storm Sewer System Improvements in the City of Phoenix, as set forth in the bidding schedule hereto attached, and furnish at his own cost and expense all necessary machinery, tools, apparatus, materials and labor, to complete the work in the most substantial and workmanlike manner, according to the specifications hereto attached and the plans therefor on file with the City Engineer, and such modifications of the same and such other directions as may be made by the City Engineer and the Government Engineer as provided herein."

This clearly called for a finished improvement according to definite and certain plans and specifications.

Our attention is called to certain conditions of the contract as showing that the contractee retained control of the construction and the manner of the performance of the work, such as the provisions against employing convicts, or using convict-made materials, or employing aliens, who had not declared their intention to become citizens, or nonresidents of the city or county; limiting, for certain laborers, the hours to not more than eight per day or thirty per week; forbidding work on Sundays or holidays; the exaction of an agreement from the contractor to carry on the operations in a manner not to obstruct or discommode or injure third parties, and to that end to maintain temporary bridges over the works at street intersections or private ways as directed by the city engineer, or to provide proper fencing or watchmen and the placing of signal lights near dangerous work, and to carry full coverage for workmen's compensation and public liability insurance; and other but similar details. These provisions of the contract are only incidental to the work to be performed and do not refer, either by word or implication, to the actual physical work of making the improvement; they are protective measures that grow out of the contract, and their performance or doing is only incidental to the contract. The contract is much like one where a builder contracts to construct a house according to certain plans and specifications, furnishing the workmen and all materials.

Looking to the contract to ascertain the relation between the city and the contractor, it seems quite certain that such relation was that of principal and independent contractor and not that of master and servant. The instruction was erroneous and should not have been given. The court should have advised the jury at the close of the case that the city was not liable for the tortious act of the contractor.

■ It is next complained that plaintiff's attorneys were guilty of prejudicial misconduct in drawing from witnesses the fact that the contractor was carrying liability insurance. We have expressed, in no equivocal way, our strong disapproval in personal injury cases of letting the jury know the defendant carries liability insurance, and in the recent case of *Consolidated Motors, Inc.,* v. *Ketcham, supra,* we collated and analyzed the cases and reaffirmed our disapproval of the conduct of attorneys who adroitly by examination or cross-examination develop the fact that the defendant carries liability insurance. It appears here, however, that the evidence that the contractor was insured was introduced through the consent or insistence of defendants. It came about in this way: Plaintiff wanted to introduce some portions of the contract between the city and the contractor and asked of counsel for defendants a stipulation to do it so as to avoid the introduction of the whole contract, whereupon counsel for defendants made the counter proposition "that the whole contract may be received in evidence." The following then happened:

"The Court: The record may show the stipulation. Do you now offer it in evidence?

"Mr. Moore: We offer it in evidence, your Honor.

"The Court: It may be marked in evidence. . . .

"Mr. Beer: If you are going into such as that (the consideration of the contract) you might read the whole thing.

"Mr. Moore: You can read anything you want to. This is all in evidence.

"Mr. Beer: Then you read it, and do it in the regular way. We object to doing it this way. If he wants to read the contract, let him read the whole blooming thing. You can read it.

"The Court: I think so, Mr. Moore.

"Mr. Moore: I am reading, gentlemen of the jury, from Plaintiff's Exhibit A–2 in evidence on page—

"Mr. Beer: Are you going to read the whole contract?

"Mr. Moore: It is not necessary. . . .

"Mr. Moore: I will hand it to the jury and let them read it.

"The Court: What is the purpose of this question?

"Mr. Moore: It is just to show the terms of the contract. . . .

"The Court: Well, if it is relevant to anything, Mr. Cox, the whole contract is before the jury. You can hand it to them and let them read it if they want to. He is asking this witness about the consideration.

"Mr. Beer: If every juror is going to read that contract, we will never get through here.

"The Court: I think the jurors can take it and consider such portions as they desire."

In the contract thus introduced is found this provision:

"Insurance. The Contractor shall, at all times during the progress of the work, carry with insurance carriers approved by the City of Phoenix, full coverage workmen's compensation and public liability insurance, and shall furnish the City with five (5) facsimile copies of policies from said carriers acknowledging full liability and fully insuring the Contractor against all loss and liability on account of any and all injuries to employees of the Contractor and to others. The insurance carrier, in the event of cancellation of workmen's compensation and indemnity insurance, shall notify the City twenty-four (24) hours in advance of such cancellation."

It may be the jurors did not see or read this provision of the contract concerning liability insurance and actually did not know of it until it was mentioned by witnesses in answer to questions propounded by counsel for plaintiff, but we cannot so assume in view of its being in evidence and available to the jury. The jury had an opportunity to read it and may have done so. While the fact of insurance should not have been made known to the jury, the defendant may waive the error

and does so when he consents to or insists upon its introduction.

■ Defendants make this assignment: "The trial court erred in denying defendant's motion for a new trial based upon error in the charge to the jury."

Subdivision 1, rule 12, of the rules of this court provides:

"All assignments of error must distinctly specify each ground of error relied upon and the particular ruling complained of. If the particular ruling complained of has been embodied in a motion for new trial, with other rulings . . . it must nevertheless be referred to in the assignment of errors, or it will be deemed to be waived."

The motion for a new trial was made upon five grounds. Defendants insist that the motion should have been granted but upon which one or ones of such grounds is not specified. They leave it to the court to do the work of ascertaining which, if any, of the rulings complained of in the motion was erroneous. Subdivision 2 of said rule 12, was adopted to put that onus where it belongs. It reads:

"If the assignment of error be that the court overruled a motion for new trial and the motion is based on more than one ground the same will not be considered as distinct and specific by this Court unless each ground is specially and distinctly stated in the assignment of errors."

We have frequently reminded the Bar that the rules are made to be observed.

■ Here is another assignment:

"The trial court erred in instructing the jury at the conclusion of all the evidence as follows:

" 'You are instructed that if the plaintiff is entitled to recover, the measure of her recovery is what is denominated compensatory damages; that is, such sum as will compensate her for the injury she has sustained. The elements entering into damage are the following:

Such sum as will compensate her for the expenses she has paid or incurred in effecting her cure and caring for and nursing her during the period that she was disabled by the injury; . . . ' "

We have a specific rule covering this situation, being subdivision 4 of said rule 12, reading:

"If the assignment of error be to the giving of instructions to the jury by the lower court, the appellant must state specifically wherein the instruction complained of is erroneous in its statement of the law applicable to the case, or to any particular fact or facts therein."

Although the assignment asserts the instruction is erroneous, it does not point out "wherein." The fact is the instruction states a correct rule of law. If it is bad at all, it is because some of the elements of damages it enumerates find no support in the evidence. If that be the defect, the assignment should have so specified.

We have considered all the questions properly presented by defendants' assignments and have not overlooked the contention that the verdict is excessive and was given under the influence of passion and prejudice. No reason for charging the jury with being influenced by passion and prejudice is given, except the large size of the verdict, which will hardly sustain the charge, and the evidence that the contractor was insured, which was admitted with defendants' consent.

The evidence as to the extent of plaintiff's injuries and their permanency is in conflict. If one side is believed, plaintiff is not permanently or badly injured, but, if the other side is believed, her injuries were not only severe but permanent. It was for the jury to say which set of witnesses was correct and from their verdict they must have concluded the plaintiff was permanently disabled from performing her work of a

domestic servant or janitress. The damages do seem large, but we cannot say from the record that they are excessive or that the jury was influenced by passion and prejudice.

The judgment as to the defendant City of Phoenix is reversed, with directions to dismiss as to such defendant, but is affirmed as to the other defendants.

McALISTER, C. J., and LOCKWOOD, J., concur.