229 P.2d 949

**CITY OF PHŒNIX et al. v. MUBAREK ALI KHAN.**

No. 5271.

Supreme Court of Arizona.

April 16, 1951.

B. Jack Choisser, City Atty., Jennings, Strouss, Salmon & Trask, and Rex H. Moore, all of Phoenix, for appellants.

Brown & Langerman, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Maricopa County in favor of plaintiff-appellee and against defendants-appellants, from an order denying defendants' motion for judgment notwithstanding the verdict and from an order denying defendants' motion for a new trial. The parties will hereinafter be referred to as plaintiff and defendants.

The facts are that on October 31, 1948, at about 6:15 p. m. plaintiff boarded a westbound bus at 15th Avenue and West Van Buren Street operated by defendant City of Phoenix and driven by defendant C. J. Clark. The bus was loaded to the extent that a number of passengers, including plaintiff, were compelled to stand in the aisle. After plaintiff paid his fare he took a position in the aisle immediately back of the driver holding on to an upright metal bar with his right hand.

West Van Buren Street is a four-lane highway until it reaches 23rd Avenue. At that point the paved portion of the road is narrowed to a three-lane pavement which constitutes the traveled portion of the road. As the bus approached 23rd Avenue

4

it was traveling on the lane just north of the center of the road and by going approximately straight ahead would travel upon the north lane of the three-lane pavement west of 23rd Avenue. Just as the bus crossed 23rd Avenue the driver observed that a car which had been traveling west on the north lane of the four-lane highway ran on to the unpaved portion of the road which just west of 23rd Avenue was full of holes. Upon observing the situation the bus immediately pulled over to the center or passing lane of traffic so that the car to his right could get on the north lane of traffic which it did. The car proceeded along the north lane 20 to 30 feet ahead of the bus as it continued on the center or passing lane. Ahead of the car to whom the bus driver had surrendered the right to the north lane there was another car also using the north lane.

24th Avenue runs south from Van Buren Street but does not extend north thereof. As the bus and the two cars on the north traffic lane approached 24th Avenue and West Van Buren Street the driver of the bus saw the leading car on the north lane suddenly and without warning turn on to the center lane of traffic and stop at a point where 24th Avenue intersects on the south with West Van Buren Street. When stopped this car was headed in a southwesterly direction completely blocking the center lane and a portion of the north lane. It was evident that the driver of the car intended to go south on 24th Avenue. The

bus was 80 to 90 feet back of the car when he saw the driver turn over on to the center lane of traffic and stop. The bus driver testified that eastbound traffic was heavy but it appeared to him that the car would be able to cross over on to South 24th Avenue without interference from the approaching eastbound traffic. It developed, however, that the driver of the car did not undertake to immediately cross to 24th Avenue.

The bus driver further testified that as soon as he saw the car pull over on to his lane of traffic he took his foot off of the accelerator and began to fill the brakelines with air; that, at this time, he was traveling not over 25 nor less than 20 miles per hour; that he traveled 25 to 30 feet while he was filling the brakelines with air and drove 10 to 12 feet after the brakelines were filled before he actually applied the brakes; that he brought the bus to a stop 3 or 4 feet back of the car blocking his lane of traffic and that he probably swerved slightly to the left in bringing the bus to a stop because of the closeness of the second car in the north lane of traffic. The second car had been compelled to stop, or did stop, because of the partial blocking of the north lane of traffic by the car which had attempted to turn south into 24th Avenue.

The evidence disclosed that a motor vehicle driven at 25 miles per hour may be stopped within a distance of from 40 to 46 feet after application of the brakes and

that it will travel approximately 27 feet during the reaction period of the average driver, that is the time elapsing between the will to act and the act itself. Thus a motor vehicle traveling 25 miles per hour may be brought to a stop approximately 65 to 73 feet from the point where the driver first decides to bring the vehicle to a stop. There is a slight conflict in the testimony offered by the plaintiff and the defendant relative to the distance within which such stop may be made but the variation is slight ranging from 6 to 10 feet.

According to all the evidence the bus stopped suddenly with a slight jerk; that it was different from the ordinary stop of a bus; that it threw plaintiff around (either to the right or left) and against the coin box or against a bar or metal railing back of the driver. Either plaintiff's hip or his back came in contact with one of these metal objects. Plaintiff claims his head also struck a metal bar back of the driver when he fell. A witness in front of whom he was standing stated positively, however, that his head did not strike anything. Other witnesses said they didn't see it strike anything.

■ Whether it did or not was a question of fact for the jury and is in nowise material to a disposition of this case.

After the accident the bus driver had plaintiff placed on a bus coming into Phoenix, with instructions that he be taken to the supervisor's office. Upon arriving at that office he was conveyed to St. Monica's Hospital where he remained for 11 days, during a part of which period he was considered by physicians in attendance to be in a critical condition.

Defendants have presented 12 assignments of error for our consideration.

■ Assignment of error No. 1 is based primarily upon the court's refusal to instruct a verdict for the defendant. We are of the opinion that the court correctly denied defendant's motion for an instructed verdict and for judgment notwithstanding the verdict for the reason that the evidence, taken in whatever light it may be viewed, is of such character that reasonable men may draw different inferences from it and reach different conclusions as to whether or not the bus driver exercised that degree of care the law required of him under the circumstances. The question of negligence was therefore properly submitted to the jury.

■ Assignment of error No. 2 is directed at the refusal of the court to permit the witness James W. Salmon to answer the following question: "Did the bus driver do anything unnecessary under the circumstances then and there existing, in the manner in which he stopped the bus, as you saw it when you looked out the windshield?" The substance of the question asked was whether or not defendant Clark was negligent in bringing the bus to a stop at the time and place of the accident. This testimony was offered as opinion evidence based upon his expert knowledge as

an experienced truck and bus driver. Even if it were conceded that expert testimony might be admissible under certain circumstances, in this case, however, the witness was not sufficiently qualified by counsel to testify as an expert. The sum total of his testimony was that he had driven a bus for the Navy and for a small bus company at McAllister. Whether he was employed for a day, a week or a year does not appear. It appears that he had also driven a truck but the extent of this experience is still more indefinite. The ruling of the court excluding his testimony was therefore correct.

For convenience and brevity we will consider assignments of error Nos. 3, 4, 5 and 8 together. These assignments are directed at the ruling of the court in admitting evidence over the objections of defendants.

Upon the theory that it tended to show plaintiff's earning capacity the trial court admitted in evidence the testimony of plaintiff giving a rather complete history of his life, beginning with his royal birth 51 years ago; his exile from India at the age of 13; his later migration to America; his representation of Mahatma Gandhi at some time during the life of the latter; his organization of the Indian Welfare League in the United States; his continuous occupancy of the office of president of that League since its organization, part of the time against his personal wishes; his comparison in importance with the Prince of Wales; his acquaintance with at least two presidents of the United States and his interviews with them; his acquaintance with United States Senators and other high officials and his appearance before Congressional committees on behalf of his native country in an effort to secure the repeal of the Indian Exclusion Act; its successful achievement; his efforts in behalf of allied powers during World War II in which he claims to have been responsible for getting 40,000 Indian soldiers on the Burma Road practically over night; and numerous other incidents and events of like character.

The related experiences of plaintiff are, to say the least, most interesting but until they are, by competent evidence, translated into some measure of monetary value they can hardly form a predicate for the recovery of damages for loss of earning capacity proximately resulting from personal injury suffered by him. The measure of damages for loss of earning capacity is the difference between what an injured person was capable of earning before the accident and injury and what he is capable of earning after the injury. Kirk v. Seattle Electric Co., 58 Wash, 283, 108 P. 604, 31 L.R.A.,N.S., 991. No evidence was offered by plaintiff to show either of the above predicates upon which to base a judgment for damages. True, it is not necessary to show that the injured person had been engaged in gainful employment before the accident.

For instance a housewife when injured by the negligence of another may recover damages for loss of earning capacity although she had never received any compensation for household work, but the value of such services is capable of being ascertained and the court in the case of Wilcox v. Sway, 69 Cal.App.2d 560, 160 P.2d 154, 160, cited by appellee said " * * evidence of what persons in a similar vocation commonly earn is admissible * *." Such evidence, however, is only one of the factors to be considered by the jury in ascertaining the loss of earning capacity as hereinafter pointed out in Shaw v. Pacific Supply Co-Operative, 166 Or. 508, 113 P.2d 627.

It is also true that earning capacity and past earnings are not always synonymous. A person highly trained in some field of activity such as a civil, mining or electrical engineer may not be able to procure employment and forced to accept work as an ordinary laborer. In such cases his earnings as a laborer would not be the measure of his earning capacity. Neither is the amount earned by an injured person prior to the injury to be treated as the sole measure of his earning capacity although it is a proper matter to be considered. Other elements must be taken into consideration in determining the future earning capacity of such person.

The cases cited by appellee do not support his claim that the evidence above related furnishes a basis for the recovery of damages. In the case of Shaw v. Pacific Supply Co-Operative, supra, the court properly made a distinction between what one has earned in the past and his capacity to earn in the future but the court said his past earnings were a proper consideration for the jury in arriving at his earning capacity but that the jury must also consider his age, his experience, his expectancy of life and his habits of industry. The court further said the cost of hiring some one to do his work after the injury was also a proper matter to consider in determining his future earning capacity. The plaintiff in that case was a farmer and the evidence showed that his annual net income was approximately $3000 a year. Neither does Dowd v. Morris, 133 Wash. 215, 233 P. 320, support plaintiff's claim. In that case the plaintiff had been more or less steadily employed up to within two years of the injury (although he was suffering from a former injury which had brought on epilepsy); that within the two years immediately preceding the accident he had done odd jobs for which he was compensated. At the time of his injury he was on his way to take employment. Thus again a monetary basis is furnished the court upon which to predicate a judgment for damages for loss of earning capacity. In the case of Ostertag v. Bethelehem Shipbuilding Corporation, 65 Cal.App.2d 795, 151 P.2d 647 (cited by plaintiff), the plaintiff in that case was an apprentice electrician earning $3.75 per day at the time of his injury and $6.00

per day at the date of trial. The court pointed out that in war periods during labor shortages plaintiff might be able to procure employment temporarily, at high wages when in fact he was suffering from a handicap that would materially diminish his earning power in normal times, and that it was his ability to earn that furnished the basis for a finding of earning capacity. There plaintiff's ability had been translated into a monetary value. He had actually been earning wages; he was an apprentice electrician and naturally had the prospect of advancing to the classification of a journeyman which would in itself enhance his earning power. There is no evidence in the record in the instant case which tends to show the value of plaintiff's service in the past or to show his training in any field of endeavor, industrial, professional or otherwise, which could form the basis for establishing *earning capacity*. In personal injury actions unless there is shown to be a diminished earning capacity measured in terms of dollars and cents flowing from such injuries there can be no recovery based upon this particular element of damages. Such damages are compensatory in nature. Compensation is presumed to be commensurate with the loss sustained. If no loss of *earning capacity* is shown no compensation can be awarded for it.

The testimony of the witness Machell to the effect that he was writing a biography of the life of plaintiff which he proposed to publish and sell, and in the event it was published plaintiff was to share in the profits of the venture, falls in the category of speculation. In the first place the book that is being written by the witness may never be published. In the second place if it should be published it is wholly speculative whether it will ever produce a profit. There is a further reason why this latter evidence was inadmissible as pointed out by appellant. The complaint contains no allegation upon which such special damages could be predicated. We therefore hold that the court committed reversible error in admitting the above testimony in evidence and permitting it to remain without further evidence tending to show its bearing on plaintiff's past or future *earning capacity*. Of course plaintiff would be entitled to recover for any pain or suffering shown to have resulted from his injuries. We are simply holding that the evidence admitted did not prove loss of *earning capacity* and that it was error to admit it for the consideration of the jury without making some showing of its bearing on his ability to earn.

Assignment of error No. 7 is based upon the alleged misconduct of the plaintiff while on the witness stand in attempting to exhibit a scrap book containing immaterial matter, to the jury. In assignment No. 9 it is claimed that counsel for plaintiff was guilty of misconduct in cross-examining defendant Clark by dis-

closing to the jury the nature of a discussion of questions of law in chambers and in the absence of the jury. We believe either occurrence would have warranted the court in granting a mistrial. On the other hand we do not believe that either occurrence tended to prejudice defendants' case and therefore hold that it was not an abuse of discretion for the court to deny a mistrial. Consequently it was not reversible error. In the first instance the witness simply offered to present to the jury for their examination something not in evidence and which could under no circumstances have been admitted in evidence. The jury had no opportunity to examine it and therefore gained no information from it. In the second place counsel's reference in his question to "time reaction" of a driver of a motor vehicle in the operation of bringing it to a stop was of minor significance. Evidence was later received in open court concerning the matter.

Assignment of error No. 10 is directed at the instruction of the court giving a rescript of sections 66–101 and 66–109, A.C.A.1939, relating, respectively, to the speed of motor vehicles upon public highways and the requirement that such motor vehicles upon following another upon a public highway must not be closer than is reasonable and prudent having due regard to the speed of such vehicle and traffic upon, and condition of, the highway.

As pointed out above the specific act of negligence alleged and relied upon by plaintiff was that the driver of the bus " * * * negligently and suddenly and violently stopped the bus with a jerk; that the jerking and stopping of the bus threw plaintiff off his balance and caused other passengers on said bus to fall against him, and that as a result thereof plaintiff struck his head, neck and back against various parts of the interior of the bus and particularly a metal bar and the coin box in the bus, with a great force and violence."

We think the giving of these instructions constituted reversible error. There was no allegation in the complaint either that the bus was going at an excessive rate of speed under the circumstances or that it followed another vehicle too closely which proximately resulted in an injury to plaintiff. Neither was there any evidence of excessive speed by the bus nor was there any reliance upon any testimony that the bus followed another car too closely. The whole case is predicated upon the proposition that the sudden stopping of the bus was negligent, in that it was unnecessary for the reason, it is claimed, the bus driver saw the car that blocked the center lane in which he was driving in sufficient time to have stopped the bus in the usual manner without any jerk or danger to his passengers. The issue was clear cut as formed by the pleadings, therefore the question of excessive speed or following

another car too closely were not issues in the case and in nowise related to the specific issue to be determined by the jury. The plaintiff is bound by his pleading. The court must limit its instructions to the issues therein presented. It is universally held that instructions upon the law of a case must have some application to the facts.

In City of Phoenix v. Green, 49 Ariz. 376, 66 P.2d 1041, 1042, the plaintiff had relied upon four specific grounds of negligence for recovery, as follows: (a) running the traction car at a negligently rapid rate of speed, (b) without stopping it at the street crossing, (c) omitting to give any warning of the approach of the car, and (d) failing to give the plaintiff the right of way. The court in so far as it is here material instructed the jury as follows: " 'It was the duty of the motorman in charge of the south bound car in the testimony referred to, to operate said car at a reasonable rate of speed, *to keep a reasonable careful lookout for persons upon the track in front of him or so near the track as to be in danger of being struck by the said street car* and to have his car under reasonable control and as he approached the intersection, to bring the street car to a full stop and to exercise ordinary care as he approached and crossed over the intersection, and to so operate his street car as to avoid colliding with persons lawfully using or vehicles lawfully upon the highway or within the intersection involved herein. * * *' "

The court held that by incorporating in the instruction *"to keep a reasonable careful lookout for persons upon the track in front of him or so near the track as to be in danger of being struck by the said street car"* constituted reversible error for the reason that it was without the issues as made by the pleadings. The court further said:

"In this case, plaintiff chose to rely on four specific acts of negligence as being proximate causes of the collision. He could not, therefore, recover upon the proof of some other act of negligence not included in the four which he pleaded. He did not plead that the motorman failed to keep a reasonably careful lookout or to keep his car under reasonable control. * *

" * * * The instruction was not only unwarranted by the pleadings but was necessarily prejudicial, for the jury might have reached the conclusion from the evidence on behalf of defendant's witnesses that the motorman was not guilty of any of the specific acts of negligence set up in plaintiff's complaint, but have inferred from other evidence in the case that he failed to keep a proper lookout, or to keep his car under reasonable control. * * *".

In the case of Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325, 331, in which the court instructed upon abstract

questions of law not within the pleadings, the court said: "An instruction not based upon the evidence in the case is misleading and calculated to induce the jury to suppose that such a state of facts, in the opinion of the court, is possible and may be considered by them."

And again: " 'The scope of an instruction in a particular case, whether civil or criminal, is to be determined not alone by the pleadings therein, but also by the evidence in support of the issues; and even though an issue is raised by the pleadings, it is not proper to give an instruction thereon where there is no basis for it in the evidence. An instruction not based on the evidence is erroneous in that it introduces before the jury facts not presented thereby, and is well calculated to induce them to suppose that such state of facts in the opinion of the court is possible under the evidence and may be considered by them. * * * ' " the latter being a quotation from 53 Am.Jur., Trial, Sec. 579. The rules covering instructions on negligence, laid down in the cases cited above should be carefully observed by the court in a retrial of this case.

It is unnecessary to discuss the remaining assignments of error. The case must be reversed and remanded for a new trial and it is so ordered.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concurring.