126 So.2d 759 (1961)
Bessie GOLDSTEIN and Alex Goldstein, Appellants,
v.
Henry Earl WALTERS, Appellee.
No. 1879.
District Court of Appeal of Florida. Second District.
January 27, 1961.
Rehearing Denied February 23, 1961.
Sylvan B. Burdick, Potter, Langbein, Burdick & Silvian, West Palm Beach, for appellants.
W.C. Owen, Jr., Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, for appellee.
ALLEN, Chief Judge.
The appellants were the plaintiffs in the lower court in an action for damages for personal injuries caused by a collision between plaintiffs' automobile and the appellee-defendant's automobile. The court directed a verdict in favor of plaintiffs on the issue of liability and the question of damages was submitted to the jury. A verdict of $1,500 was awarded Alex Goldstein and a verdict of no damages was awarded Bessie Goldstein. The plaintiffs' motion for new trial on the amount of damages was denied. *760 This appeal raises primarily the question of the adequacy of the verdicts.
The plaintiff, Alex Goldstein, was driving his automobile in which Bessie Goldstein, his wife, was a passenger, along state road No. 809 in Palm Beach County, when the defendant drove onto the highway from the side thereof and sideswiped the plaintiffs' automobile. The defendant was allegedly intoxicated and was driving at a rate of approximately 15 miles per hour. The plaintiff was traveling at approximately 15-20 miles per hour. These facts are undisputed and the issue of liability seems to be unquestioned. The conflict in evidence and testimony concerns the extent of plaintiffs' injuries and damages.
Four days after the accident, both plaintiffs went to see a general practitioner who observed some swelling in Mr. Goldstein's right knee and swelling in Mrs. Goldstein's right ankle. Mr. Goldstein was treated by the practitioner in July, twice in October, 1958, and again in April, 1959, after which he was operated on by an orthopedic surgeon on May 11, 1959. Mr. Goldstein made seven post operative visits. There are conflicts in the testimony but it appears that Mr. Goldstein had been treated for knee trouble prior to the accident. The appellant-husband, Mr. Goldstein, proved up a total of $1,020.25 for medicine, hospital and doctors' bills, which sum includes Mrs. Goldstein's expenses also. In his pretrial deposition, Mr. Goldstein stated that he lost approximately a total of two weeks' work at $100 per week prior to the operation. At the trial, on direct, he testified that he lost eight weeks' pay altogether, which included the post operative recovery period of five weeks.
Appellant-wife, Mrs. Goldstein, has suffered from asthma for several years. There was medical testimony that her right ankle was swollen; that she complained of pain in her neck, shoulders and arm; that she complained of her back; but that her asthmatic coughing could aggravate the muscular ailments. Doctor White, defendant's medical witness who had examined Mrs. Goldstein, stated that he could not say positively that her ailments were in no way related to the accident.
The lower court stated in denying the motion for new trial:
"This cause was duly presented January 28, 1960 by counsel for the parties, after notice, and upon consideration thereof, It Is Ordered and Adjudged that plaintiffs' motion, filed December 4, 1959, for a new trial, is denied. It seems to the court that it was proper to infer from the evidence that the automobiles in question did not collide with much force. The jury was justified in drawing the inference that plaintiffs suffered little or no damage."
The appellants pose two questions:
"Are the verdicts, for husband for an amount less than his proved special damages and for wife for `none', legally inadequate?"
And:
"Where there is no proof of loss of earnings in the past or future, is a housewife entitled to an instruction that permits the jury to find loss of earning power?"
The appellants contend before this court that the verdict for the husband in an amount less than his out-of-pocket damages and the verdict for the wife for no damages are "legally inadequate," and therefore plaintiffs are entitled to a new trial. As was originally noted in Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376, 377, at common law a new trial based on inadequacy of damages was not permissible but the general rule now is that a verdict for grossly inadequate damages stands on the same basis as a verdict for excessive damages and a new trial may as readily be granted in the one case as in the other.
In the Radiant Oil Company case the plaintiff-father and his minor plaintiff-daughter *761 instituted an action seeking damages for injuries to the daughter as a result of negligent operation of one of the oil company's trucks. The issues were tried before a jury and the minor plaintiff recovered $1,000 and her father recovered $1,767.05, the exact amount of his claimed and proved medical expenses. Motions for new trial were filed which the lower court denied as to the father but granted a new trial on the issue of damages for the minor on the basis that her verdict was inadequate. The oil company appealed from the judgment in favor of the father and from the order granting the minor a new trial on the issue of damages. In commenting on the setting aside of a jury verdict and granting a new trial, the Supreme Court stated:
"It has been held that under the old common law rule, a motion for new trial for inadequacy of damages should not be granted but the general rule now seems to be that a verdict for grossly inadequate damages stands on the same ground as a verdict for excessive or extravagant damages and that a new trial may as readily be granted in one case as the other. Such verdicts will not be set aside for the mere reason that they are less than the Court thinks they should be. It must be shown that the verdict was induced by prejudice or passion, some misconception of the law or the evidence or it must be shown that the jury did not consider all the elements of damage involved, missed a consideration of the issues submitted or failed to discharge their duty as given them by the Court's charge. 20 R.C.L. 283." (Emphasis added.)
In Allen v. Powell, 152 Fla. 443, 12 So.2d 378, 379, plaintiff's decedent had been killed while on duty in the employment of the defendants, the receivers of the Seaboard Air Line Railway Co. The plaintiff filed suit for damages alleging that defendants' negligence was the proximate cause of the death of plaintiff's husband. The complaint alleged that plaintiff's husband had been caused to fall from the running board of defendants' train by another employee who was attempting to walk past the decedent. One witness testified that the death was caused in the manner alleged in the complaint. A witness for defendants testified that decedent fell while attempting to step from the top of the steps to the running board. During the first trial of the case the defendants' witness' testimony was not put on and the plaintiff's witness' testimony had been discredited. The first trial resulted in a verdict for $15,000. The second trial, during which both of the above witnesses testified, resulted in a verdict of $5,000. It appears that at the time of death the decedent was 62 years of age, was earning $150 per month and was supporting his wife and his thirteen year old daughter. On appeal the plaintiff raised only the question of the inadequacy of the verdict. In reversing on the ground that the jury was confused as to their duty in assessing damages, the court stated:
"Under the comparative negligence rule, Section 768.06, Florida Statutes of 1941 [F.S.A.], if the jury believed defendant's witness, there was no theory under which it could find a verdict against defendant if the death was caused by his own negligence as his evidence would seem to indicate. On the other hand, if it believed plaintiff's witness, there was shown to be no basis for the apportionment of damages. If death resulted in the manner testified by defendant's witness, the declaration would not support the judgment. There must be some rational predicate for a jury's verdict but in this state of the law, we fail to see it in this case." (Emphasis added.)
We accordingly must ascertain what reasonable basis there exists in the instant case upon which the jury could have arrived at its verdicts.
In reviewing the evidence of plaintiff Bessie Goldstein's injuries the record discloses that the doctor, who examined the plaintiffs four days after the accident, testified *762 that there was swelling in Mrs. Goldstein's right ankle; that she complained of pain in her neck and shoulder; and that this tenderness in the neck and shoulder was aggravated by the coughing due to asthma. The defendant's doctor, who examined Mrs. Goldstein shortly before the trial, testified that she had suffered from asthma prior to the trial; that she was still suffering from this condition at the time of examination; but that he could not say her complaints were in no way related to the accident, and that the doctor who examined her immediately after the accident would be in "a more advantageous position to determine whether her condition was related to the accident or not."
The plaintiffs' doctor stated in regard to the permanence of her injuries that the asthma irritated the muscular damage received in the accident; that because of this the muscles will continue to be aggravated; and that this probably would result in a 15 percent permanent partial disability. In this regard plaintiffs requested the following instruction which was refused:
"You are instructed that you may award plaintiff Bessie Goldstein such sum as you find represents the reasonable value of her diminished earning capacity, if any, resulting from the accident. If you find that she has been permanently injured and, as a result, her capacity to earn money in the future has been impaired, it will be proper to consider and attempt to measure such loss even though she has not offered any proof of loss of earnings in the past or in the future, since she will not again have the opportunity to demonstrate or prove such loss, as the law entitles her to but one trial, and that is now."
The court gave instead the following instruction requested by defendant:
"Now, I charge you further that if you find for the plaintiffs in this case, you cannot make an allowance for impairment of earning capacity unless plaintiffs have presented substantial evidence to show to what extent or what degree, if any, such earning capacity has been affected and you are not permitted to delve into speculation or conjecture in this connection."
After all the instructions had been given and the jury had retired to the jury room, the court requested counsel to state their objections to the charges as given. The plaintiffs' counsel then specifically objected to the giving of the above charge and also objected to the failure to give the plaintiffs' charge relating to loss of earning capacity, and now raise the same contentions in this court.
The plaintiff, Bessie Goldstein, was a housewife prior to the accident. In Florida Greyhound Lines v. Jones, Fla. 1952, 60 So.2d 396, 398, the appellant urged that the lower court erred in instructing the jury that if a preponderance of the evidence established the right of the appellee-housewife to recover, she was entitled, among other items, to compensation for her diminished earning capacity. The appellant urged it was error to so instruct because there was no evidence that she had any earning capacity. The Court rejected this contention on the theory that loss of earning capacity is considered an injury to a housewife's personal rights and that she may recover damages for loss of earning power, irrespective of whether she has previously been engaged in household duties only or has received earnings from commercial employment in the past. The court stated that it might well happen that a woman who has never earned a cent but who has faithfully and successfully discharged her duties as a wife and mother would suddenly be faced, by the loss or disability of her husband, with the necessity to earn money to continue maintaining her home and rearing her children. The Court also stated:
"This thought leads to the conclusion that the capability of a housewife that has been destroyed or impaired by the *763 negligent act of another may not be ignored in assaying the damage, simply because she had not gathered money in some other activity. The measuring of the loss cannot be put off until another day. If she has been incapacitated, the time would never come for her to demonstrate what she could earn; and after all, there is but one trial  and that is now. We are convinced that the matter should be submitted to the jury as a phase of the damage, as difficult of appraisal as it may be."
In the light of the above language as applied to the facts pertaining to Mrs. Goldstein's injuries, we must conclude that it was error to refuse to instruct the jury in regard to the loss, if any, of her earning capacity. She should accordingly be granted a new trial on the issue of damages.
The plaintiff-husband contends that he is entitled to a new trial on the basis that the jury awarded him an amount less than his proved special damages. There are conflicts and discrepancies in the testimony of plaintiff, Alex Goldstein, relating to his injuries. On direct, he testified that he had never had knee trouble before but, upon being reminded of treatment for knee trouble prior to the accident, he admitted receiving such treatment prior to the time of the accident. On direct he testified that he lost the equivalent of three weeks time from work prior to his operation, but on cross-examination he testified this was computed on the basis of a few hours a day over a period of time; and that his statement in his pretrial deposition that two weeks loss of work prior to the operation was more accurate. There are other variations in Mr. Goldstein's testimony but no purpose would be served to detail them herein.
The court, in Weiss v. Goldman, Fla.App. 1960, 120 So.2d 812, 813, was confronted with a contention similar to the one now under discussion. In the Weiss case, which was a personal injury action, the jury awarded plaintiff $795.55 plus costs, which was less than plaintiff's out-of-pocket expenses. After the trial court denied plaintiff's motion for new trial, the plaintiff appealed contending that the jury failed to consider all the elements of damages involved. The Third District Court of Appeal affirmed the lower court on the authority of Chomont v. Ward, Fla. 1958, 103 So.2d 635, 637.
In the Chomont case the defendant had backed his automobile out of a driveway into the plaintiff's automobile which was parked on the opposite side of the street. The plaintiff was sitting in his automobile at the time of the accident. It was admitted that there was $34 damage to plaintiff's vehicle. The plaintiff sought damages for physical injury and property damages to his car. After a trial the jury returned a verdict for the defendant and plaintiff appealed contending that since negligence of the defendant was proven and the $34 property damage was undisputed, the lower court erred in refusing to set aside the jury verdict and granting a new trial.
In affirming the trial court, the Court stated:
"In the instant case we cannot conclude that the jury was without a reasonable basis in the record for doubting the testimony of the appellant with regard to his alleged physical injuries. The record shows that there were many conflicts between the testimony of appellant given at the trial and the testimony that he gave upon a pre-trial deposition. This is so with regard both to the details of the occurrence as well as to the extent of his physical injuries.
"While several doctors testified as to some of the alleged physical injuries it was shown in each instance that the doctors rendered a clinical opinion grounded upon the factual history related by the appellant. This being so, if the jury disbelieved the appellant's story, then his entire claim for damages for physical injuries collapsed. * *"
*764 The Court also stated in regard to the jury rejecting plaintiff's conflicting evidence:
"It may be that if we had been sitting in the jury box, we as individuals might have accepted Mr. Chomont's narrative of events including his physical injuries. Under the circumstances reflected by this record, however, we think the jury acted within the orbit of its own authority when it obviously decided not to accept it. We cannot say that they were wrong and we, therefore, cannot hold the trial judge in error for declining to grant a new trial on the motion filed by the appellant."
We must likewise conclude that in the instant case the jury could properly accept or reject portions of the husband's testimony and medical evidence and, therefore, finding no reversible error, the judgment as to Alex Goldstein must be affirmed.
Reversed in part, affirmed in part.
KANNER, J., and SANDLER, HARRY, Associate Judge, concur.