462 P.2d 841

**Edna N. MANDELBAUM, Appellant,**

**v.**

**Donald L. KNUTSON and Jean Knutson, husband and wife, Appellees.**

**No. 2 CA–CIV 753.**

Court of Appeals of Arizona.
Division 2.
Dec. 30, 1969.
Rehearing Denied Jan. 22, 1970.
Review Denied Feb. 17, 1970.

position. She suffered extensive bruises, a head injury and trauma to her left elbow. As a result of the latter injury, Mrs. Knutson developed a significant neurological defect in her left arm and hand. According to the orthopedic surgeon who performed surgery, a scar tissue mass had formed on the ulnar nerve at the elbow which, due to the bony corridor of the nerve in that location, caused pressure on the nerve and cut off the blood supply to the nerve, thus causing nerve atrophy. During the surgical operation, the scar tissue was dissected and the nerve itself moved to a less compact area.

The doctor further testified that the accident was the cause of aggravating her symptoms, present in part from Cushing's disease, and that although she would be able to work, she would suffer increasing and permanent pain.

Plaintiff testified that prior to the accident she had worked for her husband as an x-ray technician and that the job involved moving heavy equipment and patients. She had attempted to work after the accident, but it proved so painful she had to quit.

Murphy, Vinson & Hazlett, by John U. Vinson, Tucson, for appellant.

Silver, Ettinger & Karp, by Jack A. Ettinger, Tucson, for appellees.

KRUCKER, Chief Judge.

Plaintiffs-appellees, Jean Knutson and her husband, sued defendant-appellant, Edna Mandelbaum, to recover damages for injuries sustained by Mrs. Knutson in an automobile accident. The jury returned a verdict of $30,000 for plaintiffs, and judgment was entered thereon. Defendant appeals the judgment.

The sole issue raised by this appeal is whether there was sufficient evidence for the trial court to instruct the jury on diminution of earning capacity.[1]

Briefly, the facts are as follows. Mrs. Knutson's car collided with Mrs. Mandelbaum's car at Broadway and Wilmot Road on June 6, 1967, in Tucson. At the time of impact, Mrs. Knutson was in a sitting

■ The general rule, and that in Arizona, is that in a personal injury action recovery may be had for decrease in earning capacity as distinct from loss of earnings. 22 Am.Jur.2d Damages § 92; Tanner v. Pacioni, 3 Ariz.App. 297, 413 P.2d 863 (1966); Olsen v. Mading, 45 Ariz. 423, 45 P.2d 23 (1935); City of Phoenix v. Parker, 49 Ariz. 382, 67 P.2d 226 (1937).

■ Loss of earnings is an item of special damage and must be specially pleaded and proved. On the other hand, impairment of earning capacity is an item of general damage, permitting recovery for loss or diminution of the power to earn in the future and is based upon such factors as plaintiff's age, life expectancy, health,

[1] The following instruction was given:
"You may award such sum, if any you may conclude the plaintiff is entitled to, by having her earning power reduced. In fixing this amount you may consider the plaintiff's health, physical ability before the accident and compare them with what they are now and on the basis of all evidence determine the present value of any loss so suffered."

habits, occupation, talents, skills, experience, training and industry.

■ To sustain such an award the injured person must establish the fact of diminished capacity and the fact that it is permanent. 22 Am.Jur.2d Damages § 93. Proof of wages actually earned need not be presented, *Id.* § 24; in fact, prior employment need not be established. City of Phoenix v. Mubarek Ali Khan, 72 Ariz. 1, 229 P.2d 949 (1951).

Defendant contends that since no dollars and cents diminution of earning capacity was shown, there could be no recovery for this element of damage. She cites City of Phoenix v. Mubarek Ali Khan, supra, wherein the court held diminished earning capacity must be shown in terms of dollars and cents, such as the average wage of persons in similar vocations or the plaintiff's actual earnings. She contends there must be a pecuniary amount proven so the jury can fix an amount of damage.

In City of Phoenix v. Mubarek Ali Khan, supra, plaintiff presented evidence of his royal birth, his representation of Mahatma Ghandi, his organization of the Indian Welfare League, his post in that organization, his acquaintance with presidents, senators and other dignitaries. The court held that unless there is shown to be a diminished earning capacity measured in terms of dollars and cents flowing from such injuries, there can be no recovery based upon this element.

However, since 1951 there have been several cases which also discuss the instruction in question.

For example, in Safeway Stores, Inc. v. Cone, 2 Ariz.App. 151, 406 P.2d 869 (1965), plaintiff slipped on a puddle at the store's checkout stand. The defendant challenged the loss of earning power instruction. The court said:

"* * * We cannot agree with the Defendant's contentions. Medical testimony established that there was not a good union of the ulnar styloid and that Plaintiff could expect to incur pain with weather changes. The Plaintiff stated that she was unable to perform many routine tasks without some pain and difficulty, and was unable to adequately perform the type of work she was doing prior to the accident. A jury would not be unreasonable in concluding that Plaintiff had sustained a permanent loss of earning power. [Citations omitted]" 406 P.2d at 873.

And in Atchison, Topeka and Santa Fe Railway Co. v. Parr, 96 Ariz. 13, 391 P.2d 575 (1964), our Supreme Court was faced with a similar challenge. It said:

"The record reveals that Parr, age 44 at the trial, had spent the major part of his adult life driving heavy trucks. Dr. Alvin L. Swenson, an orthopedic surgeon, testified for plaintiff. Since the Santa Fe admitted Dr. Swenson's qualifications and called no medical specialist, his opinions are unchallenged in the record. Dr. Swenson had performed a serious operation on Parr, the purpose of which was to 'completely eliminate the movement of the subastragalar joint' of the ankle. But the operation was not successful in freezing the joint. Another operation had been recommended by Dr. Swenson, but had not been performed at the time of the trial. However, Dr. Swenson was of the opinion that even if the prospective operation were completely successful, there would be a 'permanent disability and stiffness of the foot.' This would result, according to the testimony of Dr. Swenson, in less endurance, a decrease in agility, poor balance and coordination, less ability to tolerate jumping on the foot, and loss of normal gait. *A jury could reasonably find from such evidence that this kind of permanent injury would result in decreased earning power of Parr.* [Citations omitted]" (Emphasis added) 391 P.2d at 579.

Neither of the above cases indicate that any general dollars and cents figures on which to base damages were required to sustain the giving of the instruction. In fact, both cases recited the evidence which was found to support the instruction, and it did not include such figures.

The ultimate question is whether there is a need for dollars and cents figures as to the worth of plaintiff's diminished capacity, general or specific, in order for a jury to ascribe a money amount to the impairment.

■ We have perused the cases, law reviews, and treatises on damages and come to the following conclusion. The concepts of loss of earning capacity and loss of earnings have become confused and somewhat overlapping. However, loss of earning capacity, as an item of *general* damage, can be presented to a jury to weigh all the factors and they, by experience and common sense, can arrive at a proper monetary value, without recourse to actual past earnings. Goldstein v. Sklar, Me., 216 A.2d 298 (1966). In this sense the jury's task is akin to their fixing a dollar value for pain and suffering.

■ However, this does not obviate the requirement of proof that the plaintiff does have an earning capacity. He must show that potentially, at least, he has an ability to acquire *money*. Black's Law Dictionary, 4th Ed. We believe this was precisely what our Supreme Court had in mind in *Mubarek Ali Khan,* supra. In that case the injured party presented no evidence to show that his aristocratic heritage or his personal associations had any monetary value whatsoever. Thus, the court said:

"* * * In personal injury actions *unless there is shown to be a diminished earning capacity* measured in terms of dollars and cents flowing from such injuries *there can be no recovery* based upon this particular element of damages. Such damages are compensatory in nature. Compensation is presumed to be commensurate with the loss sustained. *If no loss of earning capacity is shown no compensation can be awarded for it."* (Emphasis in original and emphasis added) 72 Ariz. at 8, 229 P.2d at 953.

We believe that all that is required in Arizona is that plaintiff show a permanent diminution of earning capacity and his capacity to earn money. This means for example, as has many times been held, that a housewife who has never earned any wages can receive compensation for loss of her capacity to earn the wages for her skills. No past earnings or even evidence of her general value need be proved. Goldstein v. Walters, Fla.App., 126 So.2d 759 (1961); Arando v. Higgins, 220 S.W.2d 291 (Tex.Civ.App.1949); Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396 (Fla., 1952); Wilson v. Sorge, 256 Minn. 125, 97 N.W.2d 477 (1959). Likewise, there are also numerous other classes of people for whom there could be no proof as to the actual dollars' worth of their capacity. College students, children, retirees, those working without wages in a family business, all have a capacity to earn; none could state its value. Connolly v. Pre-Mixed Concrete Co., 49 Cal.2d 483, 319 P.2d 343 (1957); Wilson v. Sorge, supra. We believe that the *Safeway* and *Parr* cases confirm this position by recognizing that compensation is available when it can be shown that plaintiff was a wage earner at the time of the injury. Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie Railroad Co., 244 Minn. 1, 68 N.W.2d 873 (1955).

■ In the instant case, plaintiff presented both evidence of her condition's permanency and that she had a capacity to earn. She worked for her husband as an x-ray technician and it is not clear whether she was actually earning wages or providing services to a family business. We believe that there was sufficient evidence to support giving the challenged instruction.

Judgment affirmed.

HATHAWAY, and HOWARD, JJ., concur.